**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

William Michael Bumpus,

Plaintiff,

v.

United Airlines Inc.,

Defendants.

Case No. 1:23-CV-03900

Plaintiff Demands Trial By Jury

# Second Amended Complaint For Declaratory, Injunctive Relief And Damages Pursuant To The Uniformed Services Employment And Reemployment Rights Act And The Illinois Service Member Employment And Reemployment Rights Act

Plaintiff, William Michael Bumpus, through undersigned counsel, complains of Defendant United Airlines Inc. as follows:

## SUMMARY

1. Plaintiff, William Michael Bumpus ("Bumpus"), brings this Complaint against United Airlines Inc. ("UAL" or "United"), under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4312 (Count I), USERRA 38 U.S.C. § 4313 (Count II), USERRA 38 U.S.C. § 4312(e) (Count III), USERRA 38 U.S.C. § 4311 (COUNT IV), and the Illinois Service Member Employment and Reemployment Rights Act, 330 ILCS 61/1-1 *et seq.* ("ISERRA") (Count V).

## JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiff's federal claims (Counts I, II, III and IV) pursuant to 28 U.S.C. §§ 1331 and 1337.

3. The Court has supplemental jurisdictional over the Illinois state

claim (Count V), pursuant to 28 U.S.C. § 1367, as it is part of the same case or controversy as the federal claim.

4. Venue is proper in this District under 28 U.S.C. § 1391(b) because this District is a district where a substantial part of the events giving rise to plaintiff's claims occurred, and where UAL resides and does business.

## PARTIES

5. Plaintiff, William Michael Bumpus ("Bumpus"), is a natural person who resides at 11 NW 730th Road, Warrensburg, Missouri 64093, who is a commercial airline pilot with the rank of First Officer who was hired and furloughed by UAL and seeks reemployment in his position at UAL, with full seniority, subsequent to his leave for military service.

6. Bumpus is an "employee" as that term is defined by 38 U.S.C. § 4303.

7. Defendant UAL is a commercial air carrier and corporation organized and existing under the laws of the state of Delaware with its headquarters and principal place of business at 233 South Wacker Drive, Chicago, Illinois 60606.

8. UAL is a "common carrier" by air, engaged in interstate or foreign commerce, and is subject to the provisions of the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151, First; 181. UAL is an employer as that term is defined by 38 U.S.C. § 4303.

## FACTUAL ALLEGATIONS

9. Bumpus is currently an instructor pilot at Whiteman Air Force Base,

Missouri. He had a distinguished career in the U.S. Air Force, Air Force Reserves and Air National Guard. He retired at the rank of Lieutenant Colonel.

10. UAL is a major US airline and by some measures the third largest in the world.

11. UAL and the Air Line Pilots Association ("ALPA") are together parties to the current pilots' collective bargaining agreement ("contract" or "collective bargaining agreement") entered into pursuant to the Railway Labor Act, also known as the "United Pilot Agreement" ("UPA").

12. For decades prior to the current contract, ALPA and UAL have been parties to a succession of RLA-governed contracts covering the Pilots craft or class.

13. On June 11, 2000, UAL hired Bumpus as a pilot and assigned him to the pilot domicile in Denver, Colorado.

14. On September 28, 2001, Bumpus began a two-year military leave of absence to engage in uniformed service in the 706th Fighter Squadron of the Air Force Reserve. Bumpus planned to return to United in September 2003. UAL acknowledged and approved this military leave of absence.

15. In February 2002, Bumpus received a letter from United informing him that he would be furloughed on March 2, 2002. The letter did not reference his military leave.

16. On March 2, 2002, Bumpus received a phone call from a United

supervisor notifying him of his furlough. Bumpus informed the supervisor that he was on active duty with the Air Force Reserves and attending flight training at Barksdale Air Force Base, Louisiana. Bumpus further stated that he would remain employed by the Air Force while furloughed. The United representative stated that he was relieved that Bumpus had continuing employment with the Air Force.

17. Unbeknownst to Bumpus, on March 2, 2002, United unilaterally and administratively returned him from military leave—which was ongoing at that time—changed his status with United to "active" and then immediately furloughed him from his UAL pilot position with a recall window of seven years ending March 2, 2009, under the then-applicable collective bargaining agreement. Under a successor collective bargaining agreement that became effective in 2003, Bumpus' furlough recall rights were extended until March 2, 2012. *Bumpus was never directed to return to United and never sought to return, nor did he return, from military leave to United or his United domicile in 2002 because he was actively engaged in military service.*

18. Because he did not seek to return, nor did he return, from military leave in 2002, Bumpus should not have been unilaterally returned from leave. This administrative action and his immediate furlough did not constitute reemployment following military service since Bumpus was still engaged in active military service at that time and, at no time, performed flight duties for UAL.

19. Bumpus did not discover UAL had unilaterally and administratively initiated a "Return from Leave" action on March 2, 2002, changing his employment status from being on "Leave of Absence" for "Military Service" to "Active," and then to "Furloughed," all on March 2, 2002, until he filed his First-Level Grievance with UAL on March 2, 2021.

20. Bumpus remained engaged in military service after his furlough and was therefore absent from his UAL position both due to military service and due to his furlough.

21. On September 5, 2006, while on active duty in the Air Force Reserves, Bumpus suffered a medical condition that resulted in his hospitalization.

22. On or about September 11, 2006, Bumpus received a recall letter from United. Bumpus elected to bypass the recall as permitted by instructions in the recall letter and United policy.

23. On May 4, 2007, Bumpus received a new recall notice from UAL.

24. On May 18, 2007, Bumpus accepted recall to UAL, which was the first time he was required to apply for reinstatement following his full-time military service. Bumpus also reported a medical condition that had occurred during his military service. This condition prevented him from flying at that time. UAL declined to reinstate Bumpus to his pilot position or offer him an alternative position.

25. On January 16, 2008, nearly eight months after Bumpus accepted recall, United notified him that he would be continued on furlough

through March 1, 2012.

26. On June 22, 2008, while on furlough, Bumpus transferred to the 122nd Air Support Operations Squadron (122 ASOS) of the Louisiana Air National Guard and began a period of active duty that ended on February 26, 2009.

27. On February 27, 2009 Bumpus' active duty tour with the 122 ASOS was extended by orders that ended on March 31, 2013. Bumpus later provided a copy of these extended orders to United. Under USERRA, those orders, commencing on February 27, 2009, required that United consider that Bumpus was on a military leave of absence effective as of that date.

28. On March 2, 2009, United administratively separated, reinstated and re-furloughed Bumpus. Under the then applicable collective bargaining agreement, this extended his recall rights 10 years from this second furlough to March 2, 2019. This second furlough included over 1400 pilots, 1200 of whom like Bumpus, had been previously furloughed in 2001-2002.

29. On October 1, 2011, UAL and Continental Airlines merged. Pursuant to a decision by the National Mediation Board, effective November 1, 2011, UAL and Continental were operating as a single transportation system for labor representation purposes under the Railway Labor Act. Air Line Pilots Association, 39 NMB 33, 37 (2011).

30. On February 7, 2012, United Continental Holdings offered to

reinstate Bumpus.

31. On February 22, 2012, Bumpus requested military deferment as permitted under carrier policy and submitted orders, that had begun three years prior, on February 27, 2009, from the Louisiana Air National Guard in support of said deferment.

32. On February 22, 2012, United acknowledged Bumpus' military deferment, effectively recognizing a second military leave of absence that had begun with the start of his military orders on February 27, 2009.

33. On March 31, 2013, Bumpus' military service ended. He continued to suffer from the same medical condition that he had sustained during his military service which continued to render him ineligible to return to his position as a line pilot at United.

34. On March 31, 2013, at the conclusion of Bumpus' military service, he was still furloughed, and therefore remained absent from United.

35. Prior to Bumpus' first furlough in March 2002, from September 28, 2001 to March 2, 2002, Bumpus' six-month absence from United was necessitated by his military service.

36. From March 2002 until February 2009 Bumpus' periods of military service, which further necessitated his absence, did not count towards his USERRA five-year limit because he was furloughed.

37. From February 27, 2009 to March 2, 2009 Bumpus was serving on active duty in the military, and as such was rightfully on a military leave of absence from United, his time away (one week) necessitated by his

military service.

38. From March 2, 2009 to March 31, 2013 Bumpus continued to serve on active duty in the military. This service also necessitated his absence from United. However, since he was again furloughed, this time did not count against his USERRA five-year limit.

39. In total, Mr. Bumpus' time away from United while engaged in military service was nine years, nine months and eleven days. However, since he was concurrently furloughed during that entire time except for the first five months and five days, the remaining nine years and four months of his military service did not conflict with his obligations on furlough. This military service also conformed to the United/ALPA collective bargaining agreement, which permits up to six (6) consecutive years of military service, while recognizing: "This six (6) year limit shall not commence until all furloughed Pilots are offered recall."

40. The cumulative length of his absence from employment with UAL due to his military service when he would, otherwise, be contractually obliged to return to flight duties with UAL amounted to, at most, six months, and thus did not exceed the five-year limitation set forth in 38 U.S.C. § 4312(a)(2).

41. On September 6, 2013, UAL offered to recall Bumpus to his flight position. Notwithstanding his recall window that extended until March 2, 2019, in 2013 UAL offered Bumpus a "final" recall with recall rights purportedly ending in 2015.

42. On September 14, 2013, Bumpus bypassed UAL's recall offer as permitted by the recall letter and United policy.

43. As a result of the UAL communication indicating that his recall rights ended in 2015, Bumpus queried UAL about his employment status.

44. In an email dated November 5, 2015, the UAL Senior Manager for Pilot Hiring Programs and Furlough Return Coordinator, Bill Kennedy, responded to Bumpus' inquiry by declaring that having "dug deeper into your case" he was able to confirm that Bumpus' "furlough recall window" did indeed extend until March 2, 2019.

45. On September 12, 2017, United's Managing Director of Crew Resources and Contract Administration, Mr. Paul Carlson, directed Mr. Bumpus' removal from the United pilot seniority list despite UAL's own internal records documenting that Bumpus' recall rights extended to March 2, 2019. Mr. Carlson directed this action over the objections of Mr. Bill Kennedy who provided documentation to Carlson supporting the March 2, 2019 date. Carlson stated that this information was wrong and directed Bumpus' removal, ostensibly terminating Bumpus' employment effective March 2, 2012. UAL provided no notice to Bumpus of this purported termination in 2012 until Bumpus sought to return to flight duty in January 2019.

46. Bumpus' employment should not have been terminated on March 2, 2012 since at that time he was serving on active duty and had provided copies of his military orders to United in February 2012.

47. On January 31, 2019, Bumpus communicated his desire to continue his employment with the defendant and inquired with UAL and ALPA concerning an extension of his recall rights to accommodate a medical condition that he first suffered while engaged in uniformed service. At this time, under UAL policy, where furloughed pilots timely exercised their right to recall while not holding a valid FAA medical certificate and thus not eligible to fly, United would accept the pilots as recalled from furlough (returning them to status as a UAL employee) and place them on medical leave under the terms of the collective bargaining agreement. However, UAL did not offer to reinstate Bumpus to his pilot position or offer him an alternative position.

48. On February 1, 2019, UAL responded that Bumpus' recall rights did extend to March 2, 2019 and advised him to inquire about a medical leave to preserve his right to return.

49. However, on February 1, 2019, ALPA Senior Labor Relations Counsel, Jeff Loesel, informed Bumpus that his employment had been terminated in 2007 following a mandatory recall. Notably, this was the recall where Bumpus sought reinstatement but was denied.

50. Then on February 4, 2019, instead of processing Bumpus' recall and placing him on medical leave in accordance with its policy, UAL rescinded its prior determination that his recall rights extended until March 2, 2019. UAL Coordinator Flight Operations and Pilot Hiring Programs, Alexa Dolan, wrote Bumpus to "apologize in advance for the

confusion on our end" but went on to state that "through research and communication with Manpower Planning and ALPA, we were informed your eligibility to remain on the United seniority list expired in March 2012, and therefore you are not eligible for furlough recall."

51. Thus, in response to Bumpus' request for a medical leave of absence, both UAL and ALPA *misinformed* Bumpus to the effect that his recall rights had already expired.

52. Nevertheless, with time running out on Bumpus' recall rights and amidst confusion regarding his true status, in February 2019 ALPA spoke to UAL on Bumpus' behalf and secured a tolling agreement of his recall rights.

53. The tolling agreement recognized Bumpus' right to return to UAL upon the resolution of medical qualification provided that UAL determined that Bumpus had recall rights through March 2, 2019.

54. If UAL and ALPA concurred at this time that Bumpus' recall rights were still in effect and so would extend until March 2, 2019, then UAL would have tolled the timeline for Bumpus to assert his recall rights – and the March 2, 2019 deadline would not have been enforced.

55. Instead – due to the joint, albeit *erroneous*, position of UAL and ALPA that Bumpus' recall rights had already expired, whether in 2007 or 2012 – his application for a medical leave at that time would be futile.

56. Bumpus obtained a FAA special issuance dated February 27, 2020.

57. After this, Bumpus again inquired with UAL about being reinstated.

58. Thereafter Bumpus obtained his First Class medical on June 15, 2020.

59. After this Bumpus again inquired with UAL about being reinstated.

60. On November 14, 2020, Bumpus learned about pilot furloughs that had taken place in 2008-09. On November 15, 2020, he discovered ALPA emails from 2018 and 2019 referencing furloughees from that period. The messages and reports indicated that UAL had honored the recall rights of at least 111 pilots in 2018 and 2019, while, for no discernible reason, denying his own.

61. One pilot among the 111 pilots, whose recall received the attention of news media, was First Officer Janine Purdy. Purdy is a pilot who did not perform military service at any time. She was hired in 2000, furloughed in 2002, granted a personal leave of absence in 2007, re-furloughed in 2009, and allowed to return in 2019 with her seniority from 2000 intact.

62. In March 2019, United contacted Purdy to let her know her recall rights would soon expire. Purdy accepted recall and United allowed Purdy to return in 2019 with her seniority intact.

63. Despite the fact that Bumpus was similarly situated in all material respects, other than with respect to his military service, United never contacted Bumpus in 2019 to advise him of his recall rights and refused to extend recall on the same terms as those extended to Purdy when Bumpus made his request one month prior to United's recall offer to Purdy.

64. Due to the cyclical nature of the airline industry, and of United in particular, United had double-furloughed over 1,200 pilots – initially in the period 0f 2001-03, and then again in the period of 2008-09. United permitted these pilots to return to duty as line pilots, including at least 111 who returned in the period of 2018-19.

65. Despite the fact that Mr. Bumpus was similarly situated in all material respects when compared to these 111 pilots, other than, upon information and belief, with respect to his military service, United has failed to permit Mr. Bumpus to return.

66. At no point after March of 2002 did UAL actually reemploy Bumpus in good faith by reinstating him to the position of employment he would have held but for his military service, or a position of like seniority, status and pay.

67. Mr. Bumpus sent an email to United and ALPA on January 11, 2021, informing them of his second furlough and suggesting that a comparison of his employee number with seniority records would validate his claim and align with UAL's determination in 2015, communicated to Bumpus by Bill Kennedy, that his furlough recall rights extended until March 2, 2019. The lack of any response from ALPA or UAL made it apparent, especially in light of the fact that there were over 1,200 pilots who, like him, had been furloughed in 2001-2003 and then again in 2008-2009, that there might be a concerted effort by ALPA and UAL to deny him a contractual right to employment.

68. On March 2, 2021, Bumpus filed a grievance seeking reinstatement to his position with full seniority dating to June 11, 2000.

69. On April 22, 2021, Denver Chief Pilot Rob Biddle issued a First Level Decision denying Bumpus' grievance on the alleged grounds that: "Based on the evidence presented during the hearing, I find that Mr. Bumpus failed to secure and provide to United by March 2, 2019, the date his furlough recall rights expired, the requisite medical certifications to perform his duties as a line pilot." Mr. Bumpus was unable to provide the requisite medical certification at the referenced time due to a medical condition sustained during his uniformed service. UAL thereby confirmed two things: 1) that Bumpus' recall rights did extend to March 2, 2019, and 2) that it had declined to reinstate Bumpus to his pilot position or offer him an alternative position based on a medical condition first suffered while engaged in uniformed service protected by USERRA.

70. On May 2, 2021, Bumpus timely and properly exercised his contractual rights to appeal Chief Pilot Biddle's Level 1 denial.

71. On May 18, 2021 ALPA senior labor relations counsel, Nathan Eisenberg, wrote to Bumpus through his attorney, Lee Seham, to assert, in part, that Bumpus' grievance was "contractually baseless and untimely" and that it would be "inconsistent" with ALPA's duty "to represent all pilots in the craft and class" to "support" Bumpus' grievance and that "ALPA will be presenting this information to United during the upcoming appeal hearing."

72. A hearing pursuant to Bumpus' appeal was held on May 21, 2021 presided over by UAL Managing Director of Crew Resources and Contract Administration, Paul Carlson.

73. On June 18, 2021, Managing Director Carlson issued a written decision dated June 18, 2021 again denying Bumpus' grievance but stating that "[i]f you are dissatisfied with this decision, under terms of Section 17-A-7 of the UPA, you may appeal the matter to the System Board of Adjustment within thirty (30) days of receipt[.]"

74. On July 2, 2021, Bumpus through his attorney filed with ALPA a "Submission to the United Airlines Pilots' System Board of Adjustment by First Officer William Bumpus ALPA Case No. 2021-U-33-012R", seeking to proceed to arbitration before the System Board representing himself through his attorney at his own expense.

75. On July 14, 2021, ALPA through Joseph Pedata, Chairman of ALPA's UAL MEC Grievance Committee, wrote to Bumpus' attorney, that only ALPA "and not an individual grievant" had a right to appeal to the System Board of Adjustment, and thus gain access to an arbitration hearing.

76. On July 15, 2021, Bumpus through his attorney responded to Pedata with a letter asserting both contractual and statutory grounds for Bumpus' right of access to the System Board of Adjustment and demanding that ALPA "agree to desist from any effort to interfere with or frustrate" Bumpus' "right of appeal."

77. On July 22, 2021, Pedata responded to Bumpus through his attorney in a letter denying that Bumpus had any individual right to access an arbitration hearing before the parties' System Board of Adjustment (no matter how constituted), but providing no supporting legal authority (in contrast to Bumpus' July 15 letter) for the assertion that "ALPA also disagrees with your statutory claim that Mr. Bumpus has the right to submit his grievance to the System Board ..."

78. On August 13, 2021 Pedata wrote to Bumpus to announce that it was the ALPA UAL MEC's "decision not to submit your grievance to the System Board of Adjustment" but advising him of the opportunity to appeal the denial, within ALPA, to the UAL MEC Grievance Review Panel.

79. On August 20, 2021, Bumpus made a timely written request for a hearing before ALPA's UAL MEC Grievance Review Panel.

80. In correspondence spanning from September 24 to October 10, 2021, First Officer Joseph Pedata, UAL MEC Grievance Committee Chairman, continued to indicate that ALPA would not schedule a timely Grievance Review Panel leaving Bumpus no further contractual or internal union route to access the System Board of Adjustment that would satisfy the six-month limitations period applicable under the Railway Labor Act for an action to compel arbitration.

81. On October 19, 2021, Bumpus filed a complaint in the United States District Court for the Northern District of Illinois seeking a court order compelling ALPA and UAL to permit him access to a System Board of

Adjustment to adjudicate his contractual right to recall. ALPA and UAL both asserted that the Railway Labor Act did not afford him a statutory right to access the System Board and that ALPA had the right to deny Bumpus such access.

82. On June 10, 2022, the District Court issued a decision holding that, while Bumpus was still required to exhaust his administrative remedies by submitting his grievance to the ALPA Grievance Review Panel, once he completed this review, he would have a statutory right to access the System Board of Adjustment in order to adjudicate his contractual claims.

83. Subsequent to the District Court's decision, ALPA, UAL and Bumpus reached an agreement to submit his grievance to a System Board of Adjustment consisting of a single arbitrator – John B. LaRocco.

84. Evidentiary hearings were held before the System Board of Adjustment on September 27-28, 2022.

85. Subsequent to the close of the arbitration hearing, and in response to military service issues raised by United's legal counsel during his cross-examination of Bumpus, Bumpus moved for the admission of additional documents directly related to his military service, including: (a) his Employment Offer Election Form, dated February 22, 2012, electing Military Deferment; (b) the email cover letter to his Employment Offer Election Form, dated February 22, 2012; (c) UAL's communication, from Acting Manager, Pilot Development, Captain Charlie Venema, dated

February 22, 2012, acknowledging Bumpus' Military Deferment; and (d) three documents confirming Bumpus' active-duty service. Arbitrator LaRocco refused to allow these documents into the evidentiary record.

86. On March 23, 2023, Arbitrator LaRocco dismissed Bumpus' contractual claims with prejudice based on his finding that the grievance was untimely due to Bumpus' purported failure to file his grievance within the limitations period applicable under the collective bargaining agreement.

87. Arbitrator LaRocco's decision dismissing the case failed to address that (a) in 2017, ALPA and UAL agreed to remove Bumpus from the seniority list in violation of the provisions of the CBA; (b) in 2019, neither ALPA nor UAL disclosed to Bumpus their agreement to remove him from the seniority list in 2017; (c) the same ALPA attorney, Jeffrey Loesel, who initiated the ALPA/UAL removal agreement in 2017, assumed responsibility for advising Bumpus with respect to his 2019 efforts to return from furlough without disclosing to Bumpus that Loesel had previously acted to strip Bumpus of his seniority rights; (d) both ALPA and UAL falsely represented to Bumpus that his employment records had been lost or destroyed in order to avoid the disclosure of their 2017 agreement; (e) both ALPA and UAL engaged in the willful deception of Bumpus in order to dissuade him from filing a grievance; and, (f) both ALPA and UAL had asserted the unlawful position that Bumpus was not contractually permitted to process a grievance to arbitration without the

endorsement of ALPA.

88. The Complaint in this matter asserts statutory claims that do not require the Court to resolve disputed issues of interpretation of the applicable collective bargaining agreements. However, to the extent that the Court finds that Bumpus' statutory claims require the resolution of disputed issues of contractual interpretation, Bumpus alleges that the dispute resolution process that would normally apply pursuant to the Railway Labor Act has been rendered futile by the System Board's refusal to address the merits of his contractual claims and by ALPA and UAL's active hostility to Bumpus' recall rights combined with their control of the grievance and arbitration process.

89. No prior application for the relief sought herein has been made.

## COUNT I

## FAILURE TO REEMPLOY IN VIOLATION OF THE UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT OF 1994, 38 U.S.C. § 4312

90. Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1-89 as though fully set forth herein.

91. Bumpus' supervisors and managers were aware of his military service at the time of his furlough.

92. Any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits arising under USERRA.

93. Bumpus was entitled to the reemployment rights and benefits and other employment benefits of USERRA when he contacted United on May 18, 2007 advising UAL of his desire to accept recall and further advising United that he had a disability incurred while on active duty in uniformed service.

94. Bumpus was entitled to the reemployment rights and benefits and other employment benefits of USERRA when he contacted United on February 22, 2012 advising UAL of his uniformed service and his election of a military deferment, which United acknowledged that same day.

95. Bumpus was entitled to the reemployment rights and benefits and other employment benefits of USERRA at the time his employment was retroactively terminated on September 12, 2017. On the termination effective date of March 2, 2012, Bumpus was serving on active duty in the military which service had commenced on February 27, 2009 and continued to March 31, 2013.

96. Bumpus was further entitled to the reemployment rights and benefits and other employment benefits of USERRA when he requested to exercise or extend his recall rights on January 31, 2019.

97. Bumpus was further entitled to the reemployment rights and benefits and other employment benefits of USERRA when he requested to be reinstated following the issuance of his FAA special issuance and his first class medical in 2020.

98. Bumpus was entitled to the reemployment rights and benefits and

other employment benefits of USERRA because the cumulative length of the absence and of all previous absences from his position of employment with UAL by reason of service in the uniformed services did not exceed five (5) years.

99. Bumpus was entitled to the reemployment rights and benefits and other employment benefits of USERRA because Bumpus applied for recall to UAL on January 31, 2019, and was denied recall based on UAL's recission of its earlier determination that, based on his uniformed service, his recall rights extended until March 2, 2019.

100. UAL denied Bumpus the reemployment rights and benefits and other employment benefits to which he was entitled under USERRA beginning in February 2019, when UAL denied Bumpus the recall rights it had previously recognized.

101. Throughout the relationship UAL improperly denied Bumpus' numerous requests for reinstatement.

102. For violations of 38 U.S.C. § 4312, Bumpus is entitled under 38 U.S.C. § 4323 to damages, including, but not limited to the following:

a. hiring, reinstatement or upgrading of Bumpus, with full back pay;
b. economic damages including front and back pay;
c. compensatory damages;
d. liquidated damages given that UAL knew or showed reckless disregard for its obligations under USERRA and whether its conduct was prohibited by USERRA;
e. reasonable attorney's fees;
f. expert witness fees;
g. litigation expenses;
h. court costs; and
i. any other relief that this Court deems just and equitable.

## COUNT II

## FAILURE TO REEMPLOY IN VIOLATION OF THE UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT OF 1994, 38 U.S.C. § 4313

103. Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1-89 as though fully set forth herein.

104. At the time of his reapplication for reemployment both on May 18, 2007 and January 31, 2019, Plaintiff had a disability that was incurred in, or aggravated during, his uniformed service. United was aware that Bumpus was serving on active duty at the time of both his 2002 and 2009 furloughs and had therefore met the requirements for reemployment under 38 U.S.C. § 4312. United further had notice that Plaintiff had a disability that was incurred in, or aggravated during, his uniformed service, and was therefore entitled to the additional accommodations required under 38 U.S.C. § 4313.

105. UAL, however, failed to engage in reasonable effort to accommodate Plaintiff's disability.

106. In addition, UAL failed to offer the Plaintiff any available position that was equivalent in seniority, status, and pay, which the Plaintiff would have been qualified to perform or would have become qualified to perform with reasonable efforts by UAL.

107. In addition, UAL failed to offer the Plaintiff a position which would have been the nearest approximation to a position referred to in the preceding paragraph in terms of seniority, status, and pay consistent

with the circumstances of Plaintiff's case.

108. For violations of 38 U.S.C. § 4313, Bumpus is entitled under 38 U.S.C. § 4323 to damages, including, but not limited to the following:

a. hiring, reinstatement or upgrading of Bumpus, with full back pay;
b. economic damages including front and back pay;
c. compensatory damages;
d. liquidated damages given that UAL knew or showed reckless disregard for its obligations under USERRA and whether its conduct was prohibited by USERRA;
e. reasonable attorney's fees;
f. expert witness fees;
g. litigation expenses;
h. court costs; and
i. any other relief that this Court deems just and equitable.

## COUNT III

## FAILURE TO ACCOMMODATE WITH MEDICAL LEAVE IN VIOLATION OF THE UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT OF 1994, 38 U.S.C. § 4312(e)(2)

109. Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1-89 as though fully set forth herein.

110. At the time of Bumpus' acceptance of recall on May 18, 2007, and January 31, 2019, he was convalescing from an injury/disability incurred in, or aggravated during, the performance of active duty in the uniformed services. Bumpus' active duty service qualified him for reemployment under 38 U.S.C. § 4312.

111. United failed to provide the necessary leave required for Bumpus to recover from said injury/disability as required by 38 U.S.C. § 4312(e)(2)(A) and (B).

112. For violations of 38 U.S.C. § 4312(e)(2)(A) and (B), Bumpus is

entitled under 38 U.S.C. § 4323 to damages, including, but not limited to the following:

a. hiring, reinstatement or upgrading of Bumpus, with full back pay;
b. economic damages including front and back pay;
c. compensatory damages;
d. liquidated damages given that UAL knew or showed reckless disregard for its obligations under USERRA and whether its conduct was prohibited by USERRA;
e. reasonable attorney's fees;
f. expert witness fees;
g. litigation expenses;
h. court costs; and
i. any other relief that this Court deems just and equitable.

## COUNT IV

## DISCRIMINATION IN VIOLATION OF THE UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT OF 1994, 38 U.S.C. § 4311

113. Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1-89 as though fully set forth herein.

114. Under USERRA § 4311(a), a person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform in the uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

115. Under USERRA § 4311(b), an employer may not discriminate in employment or take any adverse employment action against any serviceperson because such person (1) has taken an action to enforce a

protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter.

116. Under USERRA § 4311(c)(1), an employer is considered to have violated the anti-discrimination provisions of § 4311(a) where a servicemember's membership, application for membership, service, application for service, or obligation for service is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, service, application for service, or obligation for service.

117. An employer violates the anti-discrimination provisions of § 4311(b) if such serviceperson's actions thereunder were a motivating factor in the employer's action, unless the employer can prove that the action would be taken in the absence of such person's enforcement action, testimony, assistance, participation, or exercise of a right. 38 U.S.C. § 4311(c)(2).

118. As alleged herein, UAL unlawfully rescinded its offer to fully reinstate Bumpus in 2007, which offer Bumpus accepted. Despite the fact Bumpus had informed UAL he had a condition that prevented him from flying, United refused to extend to Bumpus a personal leave of absence similar to the leaves granted to other pilots of similar seniority

and furlough duration with medical conditions that prevented them from flying who had not performed military service.

119. At no point did UAL attempt to accommodate Bumpus' medical disability or seek to reinstate him in another position of like seniority, status, and pay, instead opting to return him to furloughed status without pay or any job duties.

120. UAL persisted in its refusal to reinstate Bumpus in response to his further reinstatement requests in 2019, and in 2020 after he received his FAA special issuance and First-Class Medical.

121. By contrast, during the period following Bumpus' service, UAL continued to reinstate, with full seniority, pilots of similar seniority and furlough duration who had not performed military service.

122. Upon information and belief, UAL's decision not to reinstate Bumpus, as it reinstated the similarly situated pilots alleged herein, was motivated in part by Bumpus' military service.

123. Upon information and belief, Bumpus' enforcement of his rights under USERRA beginning in March 2021 was a motivating factor in UAL's continued refusal to reinstate Bumpus thereafter.

124. UAL would not have taken the same adverse employment actions against Bumpus but for his military service as defined under USERRA, as evidenced by the similarly situated nonmilitary pilots it reinstated, as alleged herein.

125. UAL violated USERRA, 38 U.S.C. § 4311, among other ways, by

discriminating against Bumpus, denying him employment benefits, denying him advancement opportunity, denying him medical accommodation, denying him medical leave, denying him transfer, and/or denying him reinstatement in a position of like seniority, status, and pay, (a) because of his membership, service, or obligation to provide service in the uniformed services, and/or (b) because he took action to enforce protections afforded him under USERRA or to exercise a right provided under USERRA.

126. UAL's violations of USERRA as alleged herein were done willfully, as UAL either knew or showed reckless disregard for whether its discrimination against Bumpus was prohibited under USERRA.

127. As a direct and proximate result of UAL's actions and omissions as alleged herein, Bumpus has suffered damages including but not limited to lost wages, benefits, and entitlements.

128. For violations of 38 U.S.C. § 4311(a) and (b), Bumpus is entitled under 38 U.S.C. § 4323 to damages, including, but not limited to the following:

a. hiring, reinstatement or upgrading of Bumpus, with full back pay;
b. economic damages including front and back pay;
c. compensatory damages;
d. liquidated damages given that UAL knew or showed reckless disregard for its obligations under USERRA and whether its conduct was prohibited by USERRA;
e. reasonable attorney's fees;
f. expert witness fees;
g. litigation expenses;
h. court costs; and

i. any other relief that this Court deems just and equitable.

## COUNT V

## VIOLATIONS OF THE ILLINOIS SERVICE MEMBER EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT, 330 ILCS 61/1-1 *et seq*. ("ISERRA")

129. Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1-128 as though fully set forth herein.

130. ISERRA incorporates the full protections of USERRA into state law, including, but not limited to, 38 U.S.C. §§ 4311, 4312 and 4313, which UAL violated as detailed above.

131. For violations of ISERRA, Bumpus is entitled under Section 15-20 of the Act to remedies, including, but not limited to the following:

a. hiring, reinstatement or upgrading of Bumpus, with full back pay;
b. economic damages including front and back pay;
c. compensatory damages;
d. liquidated damages given that UAL knew or showed reckless disregard for its obligations under ISERRA and whether its conduct was prohibited by ISERRA
e. reasonable attorney's fees;
f. expert witness fees;
g. litigation expenses;
h. punitive damages;
i. court costs; and
j. any other relief that this Court deems just and equitable.

## PRAYER FOR RELIEF

WHEREFORE, Bumpus prays this Honorable Court for Judgment against UAL in an amount of back pay, economic damages, compensatory damages, punitive damages, and liquidated damages to be determined at trial, plus attorneys' fees, costs of this action, and for an order reinstating

him to his position with full seniority, and such other relief this Honorable Court deems just and proper to award.

Respectfully Submitted,

Dated: October 24, 2024

/s/Michael Haeberle
Michael Haeberle (6309164)
Patterson Law Firm, LLC
200 W. Monroe St, Suite 2025
Chicago, IL 60606
Phone: 312-223-1699
Fax: 312-223-8549
mhaeberle@pattersonlawfirm.com
*Local Counsel*

and

**Seham, Seham, Meltz & Petersen, LLP**
Lee Seham, Esq.
(*pro hac vice* pending)
lseham@ssmplaw.com
Stanley Silverstone, Esq.
(*pro hac vice* pending)
Ssilverstone@ssmplaw.com
Tel. (914) 997-1346
199 Main Street, Seventh Floor
White Plains, NY 10601
*Attorneys for Plaintiff*
*William Michael Bumpus*