**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| WILLIAM MICHAEL BUMPUS,<br><br>Plaintiff,<br><br>v.<br><br>UNITED AIRLINES, INC.,<br><br>Defendant. | Case No. 1:23-cv-03900<br><br>Hon. Sharon Johnson Coleman |

**UNITED AIRLINES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**


I. PRELIMINARY STATEMENT ........ 1

II. STATEMENT OF FACTS ........ 2

A. Bumpus's Employment and Furlough at United ........ 2

B. Bumpus's Grievance Proceedings and Litigation ........ 5

III. ARGUMENT ........ 5

A. Summary Judgment Should Be Granted on Count IV (USERRA Discrimination) ........ 6

1. United Did Not Discriminate Against Bumpus in 2007 ........ 6

2. United Did Not Discriminate Against Bumpus in 2019 ........ 9

B. Summary Judgment Should Also Be Granted on Plaintiff's Corresponding State ISERRA Claim (Count V) ........ 13

IV. CONCLUSION ........ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ayoub v. Bd. of Cnty. Comm'rs ex rel. Cnty. of Santa Fe*,
964 F. Supp. 2d 1288 (D.N.M. 2013) ..... 13

*Bhd. of Maint. of Way Emps. Div./IBT v. Norfolk S. Ry. Co.*,
745 F.3d 808 (7th Cir. 2014) ..... 10

*Boss v. Castro*,
816 F.3d 910 (7th Cir. 2016) ..... 9

*Bumpus v. Airline Pilots Ass'n*,
606 F. Supp. 3d 845 (N.D. Ill. 2022) ..... 10

*Crews v. City of Mt. Vernon*,
567 F.3d 860 (7th Cir. 2009) ..... 6

*D'Cunha v. Northwell Health Sys.*,
2023 WL 7986441 (2d Cir. Nov. 17, 2023) ..... 12

*Dunderdale v. United Airlines, Inc.*,
807 F.3d 849 (7th Cir. 2015) ..... 5

*Grimes v. BNSF Ry. Co.*,
746 F.3d 184 (5th Cir. 2014) ..... 10

*Harris N.A. v. Hershey*,
711 F.3d 794 (7th Cir. 2013) ..... 5

*McConnell v. Anixter, Inc.*,
944 F.3d 985 (8th Cir. 2019) ..... 11

*Mullins v. Goodman Distrib., Inc.*,
694 F. Supp. 2d 782 (S.D. Ohio 2010) ..... 11

*Romine v. Jack Cooper Transp. Co.*,
2024 WL 81217 (N.D. Ind. Jan. 8, 2024) ..... 11

*Smith v. Vill. of Downers Grove*,
2020 WL 1491177 (N.D. Ill. Mar. 26, 2020) ..... 9

*Washington v. Cook Cnty.*,
2025 WL 964512 (N.D. Ill. Mar. 31, 2025) ..... 13

**Statutes**

300 ILCS 61/5-5 ..... 13

330 ILCS 61/1-1 *et seq.* ..... 1

38 U.S.C. § 4311 ..... 1, 6

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**Rules**

Fed. R. Civ. P. 56(a) .......................................................................................................... 5

## I. PRELIMINARY STATEMENT

Plaintiff William Michael Bumpus ("Bumpus") is a former pilot at Defendant United Airlines, Inc. ("United") who last flew for United in 2001—nearly 25 years ago. In this lawsuit, he alleges that United discriminated against him on the basis of his military service when he sought reemployment by United, in violation of the federal Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4311, as well as the corresponding Illinois Service Member Employment and Reemployment Rights Act ("ISERRA"), 330 ILCS 61/1-1 *et seq*. Following this Court's May 2, 2025 order (ECF 49), Bumpus's complaint is now limited to two discrimination claims at two discrete time periods: 2007 and 2019.

The undisputed facts show that Bumpus was not employed or eligible to be employed by United, in 2007 or 2019, for reasons wholly unrelated to military service.

As to 2007, Bumpus concedes that when he attempted to return to United from military leave, he was medically unfit to fly, as he lacked a Federal Aviation Administration ("FAA") medical certificate. Thus, Bumpus was not eligible to serve as a United pilot, both under FAA regulations and the United-Air Line Pilots Association ("ALPA") collective bargaining agreement ("CBA"). As a result, Bumpus is reduced to only a single allegation regarding 2007: that United did not provide him a personal leave of absence while he attempted to regain his medical certificate. But United declined to place Bumpus on leave because he *did not even request* a personal leave in 2007, a point Bumpus has confirmed in his testimony. United, of course, does not unilaterally place pilots on "personal leave" when no such request is made. This straightforward set of facts is undisputed and fatal to Bumpus's discrimination claim as to 2007.

As to 2019, United denied Bumpus's request for reinstatement because, as of 2017, Bumpus was no longer a United employee—not because of prior military service. Indeed, given that Bumpus retired from the military in 2013, *six years before* his 2019 employment request, the

assertion that United discriminated against Bumpus in 2019 (or later) based on anti-military animus is unbelievable on its face.

In 2017, at the suggestion of ALPA—the certified union for United's pilots—United removed Bumpus from the pilot seniority list because his contractual recall rights had expired. *See* United's Statement of Undisputed Material Facts ("SMF") at ¶¶ 28-29, 34. When United removed Bumpus from the pilot seniority list, it did so as part of a review process that included two non-military pilots who were also removed from the seniority list, refuting any suggestion that United separated Bumpus because of prior military service. And the United decision-maker who removed Bumpus from the seniority list is himself a military veteran—an undisputed fact that further rebuts Bumpus's threadbare theory of anti-military animus. Although Bumpus relies on allegations of differential treatment to bolster his 2019 claim, the evidence reveals that no pilot who similarly lacked recall rights or was no longer a United employee was subsequently reinstated in that period.

Based on these undisputed facts, Bumpus's discrimination claim under USERRA (Count IV) fails, as does his derivative claim under ISERRA (Count V). Summary judgment should be granted to United on both remaining claims.

## II. STATEMENT OF FACTS

### A. <u>Bumpus's Employment and Furlough at United</u>

Bumpus last flew for United as a pilot 25 years ago. SMF at ¶ 2. On June 11, 2000, United hired Bumpus as a pilot. Second Amended Complaint ("SAC") ¶ 13; SMF at ¶ 1. On September 28, 2001, Bumpus's active service at United ended and he went on military leave. SMF at ¶ 2. Due to the downturn in travel following the September 11 terrorist attacks, Bumpus was subsequently furloughed along with a large number of other United pilots in March 2002. SMF at ¶ 3; SAC ¶¶ 14-15. At the time he was furloughed, Bumpus continued to perform

military service. SAC ¶ 16; SMF at ¶ 4.

In 2005, United issued the first set of pilot recalls since 2001. *See* SMF at ¶ 11. At that time, the CBA provided that pilots would hold recall rights for ten (10) years from the date of their furlough, and that pilot recalls were mandatory when issued, meaning that a pilot would either accept recall or be removed from United's seniority list and terminated.[1] *Id.* at ¶¶ 8-9.

In 2007, United issued mandatory recalls for all United pilots on furlough. SMF at ¶ 12. Bumpus received one of these recall notices in May 2007, and he understood this was a mandatory recall notice (i.e., that if he did not return, he would be subject to separation). SAC ¶ 23; SMF at ¶ 14. Bumpus informed United that he was accepting recall. SMF at ¶ 16. But, he never reported to United—not for work, training, or at all. *Id.* at ¶ 22. In fact, Bumpus lacked the FAA medical certificate necessary to fly. *Id.* at ¶ 17. And yet, instead of taking medical or personal leave, Bumpus both purported to accept the 2007 recall, and then failed to report to United. *Id.* at ¶¶ 16, 19-20, 22. In ALPA's view, Bumpus should have been terminated by United at that time—but United allowed Bumpus to remain on the seniority list, while informing him if he did not report to work with a valid FAA medical certificate by March 2012, he would be terminated. *Id.* at ¶¶ 24-25.

Bumpus failed to regain his FAA medical certificate by March 2012—the deadline that United had set four years earlier for reestablishing his eligibility to fly. SMF at ¶¶ 25-26. And in 2013, Bumpus retired from the military, with March 2013 representing the end of his military duty, either on active duty or reserves. *Id.* at ¶ 27.

Four years later, in September 2017, an ALPA representative "initiated the removal" of

[1] These contractual "recall" rights provide the terms for United to recall pilots from furlough to active flying, with recall priority based on pilots' seniority. SMF at ¶ 7.

Bumpus. SMF at ¶ 28. After a review of the pilot seniority list, ALPA did not "see a reason for [Bumpus's] continued presence on the list" and "prompt[ed] United to remove [him]." *Id.* at ¶ 29. This same review process included two non-military pilots, Angie Taylor ("Taylor") and Rick Sniderhan ("Sniderhan"), who were also identified by ALPA as similarly-situated to Bumpus. *Id.* at ¶ 30. United evaluated the employment information for these pilots and "agreed to the proposal of ALPA counsel" to remove Bumpus. *Id.* at ¶ 32. At this time, United also confirmed that Sniderhan and Taylor, two pilots with no prior military service, had been properly separated in July 2017. *Id.* at ¶ 35.

On January 31, 2019, though no longer a United employee, Bumpus reached out to United and ALPA seeking reemployment. SMF at ¶ 36. In response, on February 4, 2019, United informed Bumpus that he had previously been removed from the seniority list:

> [T]hrough research and communication with Manpower Planning and ALPA, we were informed your eligibility to remain on the United seniority list expired … and therefore you are not eligible for furlough recall.

*Id.* at ¶ 38.

After Bumpus continued contacting United and ALPA about reemployment, United and ALPA each agreed to further review the issue. SMF at ¶ 39. That further review confirmed that Bumpus had been properly removed from United's seniority list and separated, with no surviving recall rights. *Id.* at ¶ 40. Both United and ALPA communicated these findings to Bumpus. *Id.* at ¶ 41-42. As described by Bumpus: "ALPA and United presented a solid wall both denying Mr. Bumpus recall rights." *Id.* at ¶ 43. During this period in 2019, United informed Bumpus that he could apply for a new hire pilot position, ALPA relayed that opportunity, and Bumpus indicated interest in becoming a new hire; but, Bumpus still lacked the FAA medical certificate

needed to fly and he never applied for the new hire position.[2] *Id.* at ¶¶ 44-48.

### B. Bumpus's Grievance Proceedings and Litigation

In March 2021, Bumpus filed a grievance alleging that United violated the CBA by failing to reemploy him, including in 2007 and 2019, and by removing him from United's seniority list. SMF at ¶ 58. A System Board of Adjustment, convened pursuant to the Railway Labor Act (the "RLA") and chaired by a nationally-recognized arbitrator, conducted a two-day arbitration at which Bumpus, United, and ALPA were represented by counsel. *Id.* at ¶ 61. Relying on the robust evidentiary record produced by the parties, the neutral arbitrator held that Bumpus's grievance was untimely and dismissed the grievance. *Id.* at ¶ 62.

In June 2023, Bumpus filed the current action in this Court. (ECF 1). In May 2025, this Court dismissed Counts I-III of Bumpus's operative complaint, leaving only his discrimination claims: Count IV (USERRA) and Count V (ISERRA). (ECF 49).

## III. ARGUMENT

Summary judgment should be granted if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 853 (7th Cir. 2015). To defeat summary judgment, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013).

After this Court's dismissal order (ECF 49), all that remains of Bumpus's SAC is a single USERRA discrimination claim tied to two discrete time periods (2007 and 2019), as well as a corresponding ISERRA claim. However, the undisputed facts show that Bumpus was not

[2] Bumpus did not obtain his FAA medical certificate until June 2020. SMF at ¶ 48. He lost that FAA medical certificate again in 2024, and after suffering his third stroke in March 2025, Bumpus does not currently hold an FAA medical certificate. SMF at ¶¶ 49-50.

employed at both time periods for reasons entirely unrelated to his military service. Accordingly, summary judgment should be granted to United on Bumpus's two remaining claims (Counts IV and V).

### A. Summary Judgment Should Be Granted on Count IV (USERRA Discrimination)

In Count IV, Bumpus alleges that United violated Section 4311 of USERRA by discriminating against him in 2007 and 2019 (or 2020) on the basis of his military service. USERRA's anti-discrimination provision, Section 4311, provides that an individual engaged in military service shall not be denied reemployment (among other employment opportunities) "on the basis of that" service. 38 U.S.C. § 4311. Under Section 4311, an employee must demonstrate that an adverse employment action was motivated by his status as a military servicemember. *Crews v. City of Mt. Vernon*, 567 F.3d 860, 864 (7th Cir. 2009). In the event that the employee is able to make that showing, the claim still fails if the employer shows that it would have taken the same action based on a legitimate reason independent of military status. *Id.* As to both 2007 and 2019, Count IV fails at both steps of the Section 4311 analysis.

#### 1. United Did Not Discriminate Against Bumpus in 2007

Bumpus "alleges that in 2007, after learning of [his] medical condition that prevented him from flying, United refused to extend to him a personal leave of absence similar to those that United had extended to other pilots of similar seniority and furlough duration who had not performed military service, but who also had medical conditions that prevented them from flying." ECF 49 at 8; SAC ¶ 118.

But the undisputed evidence shows that Bumpus's military service was irrelevant to United's "decision" not to grant him a personal leave of absence. The reason United did not grant such an absence is that Bumpus *never asked for one*. This fatal deficiency is confirmed by

Bumpus's own testimony:

> Q (ALPA Attorney): [Y]ou didn't actually return to United in 2007, isn't that true?
> A (Bumpus): No sir, I did not go back to training or anything.
> …
> Q: ***At that time you did not request*** either ***a personal leave*** or a military leave, isn't that true?
> A: ***That's correct.***
> Q: And you also didn't request a medical leave at that time, isn't that also true?
> A: No, sir, I did not.

SMF at ¶ 20. A pilot who wants to take a personal leave from United must, of course, first ask to be placed on a personal leave. *Id.* at ¶ 21.

Bumpus does not point to any pilot comparator whose experience was different, nor could he. Indeed, the only alleged comparator that Bumpus raises in his operative complaint, Janine Purdy ("Purdy"), requested and was granted a personal leave at the time such leave was requested in 2007, and unlike Bumpus, she maintained valid contractual recall rights through the date that she returned to work in 2019.[3] SMF at ¶ 55. The undisputed fact that Bumpus failed to even request a personal leave defeats the assertion that he was denied such a leave based on his military service. That is all that is needed to resolve Count IV as to the 2007 time period—United "denied" Bumpus a leave of absence, not because he served in the military, but because he never asked for one.

If anything, Bumpus was treated more favorably by United than was required by the CBA, which likewise negates any inference that United subjected Bumpus to disfavored treatment based on his military service. In 2007, United sent mandatory recall notices to pilots like Bumpus who were on furlough. SAC ¶ 23; SMF at ¶ 12. Pilots who received such notices could elect to: (i) accept recall to employment at United; (ii) accept recall and request to be

[3] These distinctions are not new to Bumpus—United notified him of these key distinctions when he raised Purdy as an alleged comparator during his contractual grievance proceedings. *See* SMF at ¶ 56.

placed on a military or personal leave; or (iii) decline recall and thereby resign their employment with United. SMF at ¶ 15. Bumpus elected to "accept recall" and he did not request any leave of absence, as shown in his Recall Response Form below:



UNITED
A STAR ALLIANCE MEMBER

**RECALL RESPONSE FORM**

X I accept recall.

_____ I accept recall and wish to be placed on a Personal Leave of Absence to honor a previously approved employment contract (see Section 7-D-1). **You must submit a copy of the approval letter from your domicile, approving the employment contract.**
Requested leave period: ________________

_____ I accept recall and wish to be placed on Military Leave of Absence (see Section 12-D). Please supply a copy of your Military Orders.
Requested leave period: ________________

_____ I accept recall and wish to be placed on a Short Personal Leave of Absence.(see Section 12-A). **Humanitarian reason only. Please provide details**
Requested leave period: ________________

_____ I decline recall and wish to resign my employment with United Airlines.

Name: William M. Bumpus File Number: 262414

SMF at ¶ 16.

After accepting recall, however, Bumpus failed to show up for work or required training at United. SMF at ¶ 22. Pursuant to the operative CBA, pilots who accepted recall but then failed to report to United could be immediately terminated. SMF at ¶ 23. However, United did not immediately terminate Bumpus. Instead, United informed Bumpus (in January 2008) that he would have until March 2012 to regain his FAA medical certificate, and that if he failed to establish his eligibility to fly by that time, he would be terminated.[4] SMF at ¶ 25.

But the ultimate point is this: The undisputed evidence shows that Bumpus was not placed on a personal leave in 2007 because he never asked for one, not because United harbored anti-military animus. Indeed, Bumpus cannot point to any evidence suggesting this outcome was

[4] Article 7-E of the 2003 ALPA-United CBA provided a 10-year furlough period with the ten years running from March 2, 2002 to March 2, 2012. SMF at ¶ 8.

motivated by military animus, as requiring employees to request leave is a "facially legitimate" policy applicable to all pilots, "not a guise for a discriminatory purpose." *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016); *see also Smith v. Vill. of Downers Grove*, 2020 WL 1491177, at *6–7 (N.D. Ill. Mar. 26, 2020), a copy of which is attached hereto as Exhibit 1 (granting summary judgment where employer followed a policy rationale equally applicable to all employees and rejecting plaintiff's argument that the policy was a "pretext for discrimination" based on "her own disagreement" with the employer's testimony).

**2. United Did Not Discriminate Against Bumpus in 2019**

In 2019—six years after his retirement from the military, more than a decade after his USERRA reemployment rights had expired, and eighteen years after he last flew for United—Bumpus contacted United seeking reinstatement as a pilot. SMF at ¶¶ 2, 27, 36; ECF 49 at 7. Bumpus claims that United discriminated against him at this time "by not recalling or reinstating him, despite having recalled and reinstated, with full seniority, 111 other pilots who had not performed military service." ECF 49 at 8; *see also* SAC ¶ 121. These allegations are not supported by the facts.

*First*, there is affirmative and undisputed evidence rebutting Bumpus's assertion of military animus. As a threshold matter, Bumpus was no longer a United employee in 2019. And as with any United pilot, Bumpus's proposed "reinstatement" would require the exercise of valid contractual recall rights—which, in Bumpus's case, had expired multiple years prior. SMF at ¶¶ 8, 10, 25-26, 34.

As the record in this case reflects, in September 2017, Jeffrey Loesel, ALPA's Senior Labor Relations Counsel, contacted Paul Carlson, United's Managing Director of Manpower Planning and Contract Administration, about the employment status of three pilots who had

previously been on furlough: Bumpus, Taylor, and Sniderhan.[5] SMF at ¶¶ 28, 30-32. ALPA characterized these three pilots as similarly situated for purposes of removal, even though neither Sniderhan nor Taylor had any indication of prior military service. *Id.* at ¶ 30. Indeed, Loesel did not "see a reason for [Bumpus's] continued presence on the list" and "prompt[ed] United to remove [him]" because Bumpus, like Sniderhan and Taylor, had no valid contractual entitlement to remain on the list. *Id.* at ¶¶ 29, 34-35. Loesel, of course, was not an agent of United—he was an ALPA employee. Nor has Bumpus pointed to any evidence that plausibly suggests that ALPA or Loesel acted based on anti-military animus.

The same is certainly true with respect to the United employee who did remove Bumpus from the seniority list, Paul Carlson, who himself was a Navy veteran. SMF at ¶ 33. Bumpus concedes that Carlson, a former military servicemember, was the decisionmaker for his termination. *Id.* at ¶ 32. As his contemporaneous email discussions with Loesel demonstrate, Carlson decided to remove Bumpus from the seniority list based on his review and agreement with ALPA's suggestion that Bumpus lacked any contractual reemployment rights.[6] He did not

---

[5] As of May 2016, every single United pilot in the company's furlough report had an effective date of September 2008 or later, except for Bumpus (March 2, 2002), Sniderhan (June 1, 2003), and Taylor (August 30, 2003). SMF at ¶ 31.

[6] Moreover, Bumpus has now litigated and lost his contractual recall rights claim in a final and binding arbitration before a System Board of Adjustment pursuant to the RLA. Bumpus disagrees with United about when his recall rights expired. But that disagreement has been conclusively resolved against him. After moving to compel arbitration before that RLA System Board, *see Bumpus v. Airline Pilots Ass'n*, 606 F. Supp. 3d 845 (N.D. Ill. 2022), Bumpus (represented by one of his present counsel) litigated his claim that he had a contractual right to be recalled from furlough in 2019, and thus, that he retained an employment relationship with United at that time. Bumpus lost that arbitration. The System Board's decision is "final and binding upon both parties." *Bhd. of Maint. of Way Emps. Div./IBT v. Norfolk S. Ry. Co.*, 745 F.3d 808, 811 (7th Cir. 2014) (citation and quotations omitted). And it conclusively determines that Bumpus had no employment relationship with United in 2019. *See Grimes v. BNSF Ry. Co.*, 746 F.3d 184, 188 (5th Cir. 2014) ("[A]rbitral proceedings can have preclusive effect even in litigation involving federal statutory…rights."). For this additional reason, Bumpus cannot conceivably show that United violated Section 4311 of USERRA when it communicated this legitimate, non-discriminatory conclusion to Bumpus in 2019.

conceivably act based on any anti-military animus against another former servicemember. *See Mullins v. Goodman Distrib., Inc.*, 694 F. Supp. 2d 782, 791 (S.D. Ohio 2010) (inference that veteran decisionmaker acted with anti-military bias was "unreasonable").

*Second*, because Bumpus retired from the military *six years* before he sought (re)employment, his allegations that United acted based on anti-military animus are even more implausible. In *McConnell v. Anixter, Inc.*, the Eighth Circuit affirmed summary judgment in favor of the employer on a USERRA discrimination claim, concluding that the fact that the employer hired the plaintiff "more than four years after [the plaintiff] retired from active duty with the Army[] *significantly undermin[es]* any inference that ... military service was a motivating factor in its decision to fire him." 944 F.3d 985, 990 (8th Cir. 2019) (quotations omitted; emphasis added). There, the court characterized the plaintiff's arguments regarding alleged anti-military motivation as "conjecture and speculation" and ruled in favor of the employer. *Id*. Here, where the gap in time was even greater, the passage of six years between Bumpus's military retirement and United's denial of his reinstatement in 2019 clearly renders his claim of military discrimination implausible. *See also Romine v. Jack Cooper Transp. Co.*, 2024 WL 81217, at *6 (N.D. Ind. Jan. 8, 2024), a copy of which is attached hereto as Exhibit 2 ("[T]he Court cannot conclude that a seven-month interval (to the filing of the suit) or a four-month interval (to the meeting) carries Plaintiff's burden of making a prima facie case that his military service or his protected activity under USERRA was a 'motivating factor' for [his] unpaid leave."); *Mullins*, 694 F. Supp. 2d at 792 ("Plaintiff's protected activity, his deployment in Iraq, is not close enough in time to his discharge or even the first discipline that was imposed on him (seven months) to raise an inference that his deployment in Iraq was a motivating factor for either.").

*Third*, Bumpus cannot identify any similarly-situated civilian pilots whom United reinstated in 2019—he has no evidence of differential treatment. Every United pilot recalled in 2019, unlike Bumpus, had contractual recall rights at the time of their recall.[7] SMF at ¶ 51. That includes Janine Purdy, the only alleged comparator that Bumpus's complaint identifies by name. At his arbitration, Bumpus expressly (and rightly) argued that Purdy's circumstances were distinguishable, given that she had availed herself of a leave of absence from United. *Id.* at ¶ 56 ("Mr. Bumpus knew that her situation was different than his, and that a personal or maternity leave of absence was an avenue that he would not have had."). United reinstated Purdy because she had a contractual right to return when she was reemployed in 2019; United declined to reinstate Bumpus because he had no similar right. Treating Bumpus differently than Purdy based on their respective contractual rights is not evidence of anti-military discrimination.

Moreover, Bumpus has historically raised one other pilot, Roger Suro, as a comparator, but Suro was recalled from military leave during this period. SMF at ¶ 54. This further demonstrates that United's decision-making was not based on anti-military animus. *D'Cunha v. Northwell Health Sys*., 2023 WL 7986441, at *4 (2d Cir. Nov. 17, 2023), a copy of which is attached hereto as Exhibit 3 (allegation that others with same protected characteristic were treated favorably "only undermines an inference of discriminatory intent").

The undisputed facts show that United's decision to deny Bumpus's (re)employment requests in 2019 was "not the action[] of an entity or individuals with anti-military motives."[8]

---

[7] United did not recall any pilots in 2020. SMF at ¶ 53.

[8] United also communicated to Bumpus in 2019 that he was free to apply for a new hire pilot position if and when he regained his FAA medical certificate and eligibility to fly. SMF at ¶ 44. That opportunity, which Bumpus did not pursue, further demonstrates that United had no discriminatory animus in determining that Bumpus's contractual recall rights had expired well before 2019. So too does the sizable portion of United's workforce with military service: as of 2023, approximately 3,000 of United's 16,000 pilots had served or were currently serving in the United States Armed Forces and nearly 7,700 employees company-wide were military veterans. *Id.* at ¶ 57.

*Ayoub v. Bd. of Cnty. Comm'rs ex rel. Cnty. of Santa Fe*, 964 F. Supp. 2d 1288, 1301 (D.N.M. 2013). United denied Bumpus's reemployment request on the basis that he had previously been removed from the pilot seniority list and that his contractual recall rights had expired. This was communicated to Bumpus by both United and ALPA. Accordingly, Bumpus cannot establish a prima facie case of discrimination as to 2019. Based on these same undisputed facts, United also would have acted in the same manner regardless of Bumpus's military service (which had concluded six years earlier). Thus, summary judgment should be granted on Count IV with respect to 2019 as well.

### B. Summary Judgment Should Also Be Granted on Plaintiff's Corresponding State ISERRA Claim (Count V)

Count V under ISERRA is entirely derivative of Count IV under USERRA. *See* SAC ¶ 130; *see also* 300 ILCS 61/5-5 ("Section 4311 of the federal Uniformed Services Employment and Reemployment Rights Act ... and the regulations promulgated under that Act are incorporated."); *Washington v. Cook Cnty.*, 2025 WL 964512, at *18 (N.D. Ill. Mar. 31, 2025), a copy of which is attached hereto as Exhibit 4. Count V fails for the same reasons as Count IV. Thus, summary judgment should be granted to United as to Count V.

## IV. CONCLUSION

For these reasons, summary judgment should be granted to United on Counts IV and V, Plaintiff's only two remaining claims.

Dated: March 23, 2026

Respectfully submitted,

*<u>/s/ M. Tristan Morales</u>*
M. Tristan Morales (*admitted pro hac vice*)
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006
Tel: 202-383-5300
Email: tmorales@omm.com

Jason Zarrow (*admitted pro hac vice*)
O'Melveny & Myers LLP
400 South Hope St., 19th Floor
Los Angeles, CA 90071
Tel: 213-430-8367
Email: jzarrow@omm.com

Marnie A. Holz
Greenspoon Marder LLP
227 W. Monroe St., Ste 3950
Chicago, Illinois 60606
Tel: 773-395-1623
Email: marnie.holz@gmlaw.com

*Attorneys for Defendant United Airlines, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on March 23, 2026, I caused a true and correct copy of the foregoing Memorandum of Law in Support of United Airlines, Inc.'s Motion for Summary Judgment to be filed with the Clerk of the Court using the CM/ECF system.

Respectfully submitted,

*/s/ M. Tristan Morales*

M. Tristan Morales (*admitted pro hac vice*)
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006
Tel: 202-383-5300
Email: tmorales@omm.com

*Attorneys for Defendant*
*United Airlines, Inc.*