**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| WILLIAM MICHAEL BUMPUS,<br><br>Plaintiff,<br><br>v.<br><br>UNITED AIRLINES INC.,<br><br>Defendants. | Case No. 1:23-cv-03900<br><br>Hon. Sharon Johnson Coleman<br><br>Magistrate Hon. Jeffrey T. Gilbert |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, William Michael Bumpus ("Plaintiff" or "Mr. Bumpus"), through the undersigned counsel, for his Memorandum of Law in Opposition to Defendant United Airlines, Inc.'s ("Defendant" or "UAL") Motion for Summary Judgment, states as follows:

## I. Statement of Facts

See Plaintiff's Response to Defendants Statement of Undisputed Material Facts and Statement of Additional Material Facts ("Response to SMF") filed concurrently herewith.

## II. Standard of Review

On summary judgment, contrary to Defendant's suggestion, the movant, not the opponent, bears the burden of proving "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when, based on the evidence, a reasonable jury could find in favor of the non-moving party. *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 297 (7th Cir. 2010). A court construes all facts and draws all reasonable inferences in favor of the non-moving party. *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009).

## III. Argument

One purpose of USERRA is "to prohibit discrimination against persons because of their service in the uniformed services." 38 U.S.C. § 4301(a)(3) (2005); see also *Bowlds v. General Motors Mfg. Div. of the General Motors Corp.*, 411 F. 3d 808, 810 (7th Cir. 2005). Courts interpret USERRA broadly in favor of veterans. *Davis v. Advocate Health Ctr. Patient Care Express*, 523 F.3d 681, 683-84 (7th Cir. 2008).

Under the "burden-shifting framework of § 4311," a plaintiff need only demonstrate his service was "a motivating factor" in the adverse employment action against him. *Crews v. City of Mt. Vernon*, 567 F.3d 860, 864 (7th Cir. 2009). "To meet the 'motivating factor' standard, a plaintiff does not necessarily need a direct admission from the employer. She [or he] may rely instead on circumstantial evidence that creates a 'convincing mosaic' from which a reasonable jury could infer discriminatory motive." *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 284 (7th Cir. 2015). "Such evidence could include, for example, suspicious timing, statements, or behavior. In the aggregate, these individual pieces might be enough to prove—or at least to create a genuine issue about—the employer's ill motive." *Id.* at 285.

Circumstantial evidence is typically crucial in discrimination cases, as direct evidence of discriminatory intent is rare. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 141 (2000). Therefore "[d]iscriminatory motivation may be inferred from a variety of considerations," including "proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the employer's conduct and the proffered reason for its actions" and disparate treatment "compared to other employees with similar work records or offenses." *Bobo v. UPS*, 665 F.3d 741, 754 (6th Cir. 2012).

Where the plaintiff meets this low threshold, the burden shifts to the employer to affirmatively "prove that the action would have been taken in the absence of such"

service. *Crews*, 567 F.3d at 864. "Unlike the *McDonnell Douglas* framework" utilized in Title VII claims, USERRA shifts "the burden of persuasion, as well as production, to the employer." *Maxfield v. Cintas Corp. No. 2*, 427 F.3d 544, 551 (8th Cir. 2005). If the employee makes the threshold showing, "the [employer] must prove, by a preponderance of evidence, that the action would have been taken despite the protected status." *Id.* In employment discrimination cases, "questions of motive and intent are particularly inappropriate for summary adjudication." *Cedillo v. Int'l Ass'n of Bridge & Structural Iron Workers*, 603 F.2d 7, 11 (7th Cir. 1979); *see also Stumph v. Thomas & Skinner, Inc.*, 770 F.2d 93, 97 (7th Cir. 1985) ("summary judgment is improper in a discrimination case where a material issue involves any weighing of conflicting indications of motive and intent."). This is "because 'credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Decker v. Andersen Consulting*, 860 F. Supp. 1300, 1304-1305 (N.D. Ill 1994).

Here, Mr. Bumpus suffered adverse employment actions in both 2007 and 2019. USERRA "prohibits discrimination as to 'any benefit of employment by an employer on the basis of [military] membership, . . . performance of service, . . . or obligation.'" *Id.* (quoting 38 U.S.C. § 4311(a)." In turn, "USERRA defines 'benefit of employment' very broadly as 'any advantage, profit, privilege, gain, status, account, or interest (other than wages or salary for work performed) . . ., and includes . . . awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.' *Id.* (quoting 38 U.S.C. § 4303(2)). First, in 2007, Defendant refused to recognize Mr. Bumpus' service or his service-related medical condition and extend him the same leave status as it did to other pilots pursuant to UAL policy. Second, in 2019, UAL refused to reinstate Mr. Bumpus in any fashion, insisting instead that he had been unemployed with UAL since 2012. Mr. Bumpus

has presented sufficient evidence to allow a jury to determine that his service was "a motivating factor" in Defendant's decision to deny his recall rights in 2007 and 2019.

Moreover, Defendant has not affirmatively proven it would have taken the same actions in the absence of his service. Even where an employer "grant[s] [plaintiff] a considerable amount of military leave," and does not "directly discipline [plaintiff] for those particular absences," the employer does not affirmatively negate the inference of discriminatory motive. *Arroyo*, 805 F.3d at 286. So long as a jury could "reasonably conclude [the employer] 'was looking for a reason to discharge [plaintiff] because of" their service, summary judgment is inappropriate. *Id.* Nor is it sufficient for UAL to prove that it *could have* taken the adverse actions against Mr. Bumpus in the absence of his military service. Defendant's discretion to terminate the plaintiff is only the beginning of the inquiry. *Id.* Rather, UAL must conclusively prove that it *would have* terminated Mr. Bumpus regardless of his service. *Id.* UAL has failed to do so.

### A. Questions of Fact Remain as to Whether UAL Discriminated Against Bumpus in 2007

Defendant's analysis of its discrimination in 2007 relies on two peripheral arguments manufactured either without evidence or by misrepresenting the evidence. UAL first claims that pilots could not be granted leave without specifically requesting leave. In support, UAL cites § 12-A of the 2000 Collective Bargaining Agreement (the "2000 CBA"), as well as a sentence of nonspecific testimony from ALPA attorney Jeffrey Loesel during the September 27, 2022, System Board of Adjustment Arbitration. *See* ECF 87, § (III)(A)(1). Neither stand for UAL's proposition. On the contrary, the 2000 CBA expressly states UAL can grant a pilot a leave of absence for "any reason deemed adequate by [UAL]." ECF 85-21, at UNITED-0000577. The CBA *does not* require a pilot specifically request leave to be offered the same, nor does UAL claim it never offered leave in absence of a request. Rather, UAL can grant leave for any reason.

Mr. Loesel's testimony is even less relevant, as he was never a UAL employee and did not even begin representing ALPA at the UAL MEC until 2014—2 years after UAL claims it terminated Mr. Bumpus, 5 years after UAL furloughed Mr. Bumpus the second time, 7 years after UAL first discriminated against Mr. Bumpus, 10 years after Mr. Bumpus was first furloughed, and 14 years after adoption of the CBA upon which UAL now relies. *See* Response SMF, Exh. A at ¶ 3; Exh. 2 at UNITED-0001064; ECF 85-2 at 347:24, 348:1-10. In fact, at the same arbitration, Arbitrator La Rocco expressly held Mr. Loesel's interpretation of the CBA to be mere "opinion." ECF 85-3, at 367:11-24, 368:1-6.

Regardless, UAL's argument is based entirely on Loesel's statement that "[p]ersonal leaves are granted by [UAL] based on the pilot request." ECF 85-3, 131:4-5. He does not state, nor would it be correct the state, that UAL cannot offer leave absent a request, nor does he state (nor would he be qualified to state) that UAL has never offered leave to pilots returning from furlough absent a request. Likewise, despite UAL's protests to the contrary, there is no evidence that comparator pilot Janine Purdy requested a personal leave of absence in 2007. In fact, in 2019 Managing Director of Crew Resources and Contract Administration Paul Carlson personally requested comparator pilot John Becker be removed from furlough and placed on a personal leave of absence—a request that is not reflected in Mrs. Purdy's employee profile. Response SMF, Exh. A at ¶ 6; Exh. 5 at UNITED-0004278. Therefore, at minimum, a question of material fact remains as to whether UAL acted with discriminatory intent in refusing to offer Mr. Bumpus a personal leave of absence the same as similarly situated pilots such as Mrs. Purdy or Mr. Becker in 2007.

Even if personal leaves of absence required request and approval, Paul Carlson testified that military and medical leaves of absence do not. Response SMF, Exh. A at ¶ 8; Exh. 7 at

46:14-24, 47:1-13. UAL records conclusively establish Mr. Bumpus notified Defendant of his disqualifying service-related medical issue, sustained while flying on active duty, when he accepted recall on May 18, 2007. Response SMF, Exh. A at ¶¶ 4-5, 14; Exh. 3; Exh. 4 at BUMPUS00021 to BUMPUS00023; Exh. 13 at UNITED-0004380; Exh. 26 at 75:21-24, 76:1-8; ECF 85-13; ECF 85-32. Therefore, a question of fact remains as to whether UAL acted with discriminatory intent when it refused to put him on either medical or military leave when he accepted recall in 2007. To the extent UAL may seek to distinguish between these different categories of leave, whether a personal leave of absence is comparable to either military or medical leave is likewise a question of fact to be resolved by the jury. *See White v. United Airlines, Inc.*, 987 F.3d 616, 625 (7th Cir. 2021) (holding whether "any leave of absence for which [an] employer provides paid leave is comparable to any given stretch of military leave . . . is primarily a question of fact."); *Clarkson v. Alaska Airlines*, *Inc.*, 59 F.3d 424, 434 (9th Cir. 2023) ("Comparability [of leave under USERRA] is a question of fact.").

UAL next argues, for the first time and without evidence, that Mr. Bumpus was not entitled to *any* benefit of employment because he allegedly failed to report for duty after accepting recall in 2007. ECF 87, § (III)(A)(1). However, Mr. Bumpus never returned to work after accepting recall because *he was never given an assignment to which to return.* The recall notice to which Mr. Bumpus responded did not include any instructions to report for duty, nor did Mr. Bumpus ever receive any such instructions. ECF 85-31. In fact, the operative CBA mandated only that a pilot was required to return to service within the dates specified after recall, and UAL never communicated any such return date. ECF 85-10 at UNITED-0000314, § 7-D. The only requirement at the time Mr. Bumpus accepted recall in 2007, under the CBA or the terms of the recall notice itself, was that he respond in writing within 14 days of its receipt. *Id.*

Mr. Bumpus did so and also contacted both Captain Robert Neil and Dr. Gordon Landsman to disclose his medical condition per the instructions on the notice. ECF 85-31; Response SMF, Exh. A at ¶¶ 4-5, 14; Exh. 3; Exh. 4 at BUMPUS00021 to BUMPUS00023. Presumably, Mr. He therefore met the requirements of the CBA and recall notice by responding and disclosing his medical condition.

More importantly, the intimation that UAL refused to recall Mr. Bumpus or offer him alternative leave because he did not report for duty is disingenuous and preposterous. Records of another comparator pilot, Robert Gerner, show Mr. Gerner was separated from employment specifically for "failure to return from leave." Response SMF, Exh. A at ¶ 30; Exh. 29 at UNITED-0004436. This document conclusively establishes that UAL tracks and logs failures to return for duty as a distinct and independent basis for separation—one which does *not* appear in Mr. Bumpus' own employee profile. *See* Response SMF, Exh. A at ¶ 17; Exh. 16. Any claim that Mr. Bumpus failed to report for duty after recall is therefore a misrepresentation to the Court.

UAL's arguments are a transparent attempt to misdirect the Court from the relatively low bar to survive summary judgment in USERRA discrimination cases. However, Mr. Bumpus has demonstrated by circumstantial evidence that a question of fact remains as to whether his service was at least a motivating factor in its failure to offer him accommodation in 2007. First, UAL concedes that his service and service-related injury occurred roughly contemporaneously to his recall in 2007. ECF 85, ¶¶ 16-17. Second, he has identified at least one similarly situated pilot who did not serve and was offered a leave of absence. SMF, Exh. A at ¶ 6; Exh. 5 at UNITED-0004278; ECF 85-39. Because UAL has not affirmatively proven that it would have taken the same action regardless of Mr. Bumpus' service, a jury could reasonably infer that its actions were motivated by anti-military animus. *See Maxfield v. Cintas Corp. No. 2,* 427 F.3d 544, 554

(8th Cir. 2005) (holding the mere fact a servicemember was absent for extended periods sufficient for a jury to infer defendant "was looking for a reason to discharge [plaintiff].").

### B. Questions of Fact Remain as to Whether UAL Discriminated Against Bumpus in 2019

UAL again disregards the deferential standard for both USERRA discrimination claims and summary judgment in general regarding its actions in 2019. Ironically, though, every point Defendant raises illustrates a patent dispute of material fact precluding summary judgment. First, the record is replete with inconsistencies between UAL's conduct and the proffered reason for its actions in refusing to reinstate Mr. Bumpus in 2019. Second, contrary to Defendant's representations, Mr. Bumpus has identified several comparator pilots who received disparate treatment. Finally, there was significant overlap between the time during which Mr. Bumpus served and the time that UAL claims he was terminated.

#### 1. There are inconsistencies between UAL's conduct and actions

Defendant's primary argument is that it could not have discriminated against Mr. Bumpus in 2019 because he did not have "valid contractual recall rights" at that time. ECH 87, § (III)(A)(2). In other words, it is UAL's position that Mr. Bumpus' recall rights expired in March of 2012, and therefore he could not have been recalled in 2019. In support, Defendant cites only a brief September 2017 email exchange between Jeffrey Loesel and Paul Carlson. *Id.* There, when Loesel asked for Mr. Bumpus' employment history, Carlson replied with only a partial screenshot of Mr. Bumpus' Pilot Records employee portal, which showed Mr. Bumpus as being furloughed on March 2, 2002. ECF 85-13, at UNITED-0000330. Based on nothing more, Carlson agreed to process Mr. Bumpus off the seniority list the next day. *Id.* at UNITED-0000329. This exchange forms the entire basis for UAL's argument that it did not discriminate against Mr. Bumpus in 2019.

As an initial matter, even this brief exchange between Loesel and Carlson itself presents a dispute of fact precluding summary judgment. Though Mr. Bumpus' case hinges on whether UAL discriminated against him in refusing to recognize his 2019 recall rights incident to his 2009 furlough, Carlson testified he and his team had no role in implementing the second-round furloughs in 2008-2009. Response SMF, Exh. A at ¶ 8; Exh. 7 at 38:24, 39:1-24; 40:1-3. While military and medical leaves are similarly crucial to Mr. Bumpus' status, Carlson testified his team handled neither and were familiar with neither. Response SMF, Exh. A at ¶ 8; Exh. 7 at 47:14-24, 48:1-8. Although he was familiar with another UAL employee responsible for coordinating military leave, he did not discuss Mr. Bumpus' leave situation with her at any time. *Id.* at 52:14-21.

However, Carlson was aware that Mr. Bumpus had a history of military service, with the Pilot Records system Carlson referenced explicitly referencing military leave/service. ECF 85-13 at UNITED-0000329 to UNITED-0000330 (discussing Plaintiff's military status); *Id.* at 59:2-9, 60:3-13. Despite the foregoing, Carlson did *nothing* to investigate Mr. Bumpus' situation further—he did not speak to anyone regarding the issue except Loesel, and then only in the immediate email exchange discussed above and did not consult any other system besides Mr. Bumpus' Pilot Records portal page. *Id.* at 62:21-24, 63:1-12, 64:5-19, 71:16-24, 72:1-3. But the data that was in Pilot Records, the sole basis of Carlson's decision, was incomplete—it did not contain the full data reflected in Mr. Bumpus' employee profile. *Id.* at 66:22-24, 67:1-8. The fact that Carlson did not even see Mr. Bumpus was furloughed in 2009 notwithstanding, Carlson agreed that a pilot furloughed in 2009 would have recall rights extending to 2019. *Id.* at 67:16-24, 68:1-13. Therefore, on its face the September 2017 email exchange alone raises a question of fact as to whether Carlson's decision was founded on any proper basis to begin with.

Moreover, the record is replete with inconsistencies between UAL's stated position regarding Mr. Bumpus' recall rights, precluding summary judgment. Had Carlson done anything to investigate the purported "error" with Mr. Bumpus, he would have identified that UAL extended Mr. Bumpus' furlough after he accepted recall in 2007, that UAL furloughed Mr. Bumpus a second time in 2009, and that Mr. Bumpus was on military leave as of both 2009, when UAL furloughed him a second time, and 2012, when UAL purports to have terminated Mr. Bumpus' employment. ECF 85-32; Response SMF, Exh. A at ¶¶ 9-13, 17; Exh. 8-Exh. 12; Exh. 18. On this basis, everyone else at United who encountered the issue agreed at all times Mr. Bumpus' recall rights extended to March 2, 2019.

On October 6, 2015, Bill Kennedy, Senior Manager of Pilot Hiring Programs & Furlough Return Coordinator, contacted Jennifer Thompson, Senior Manager of Labor Relations, among others *including Paul Carlson*, regarding the furlough and recall status of 7 pilots who had been furloughed a second time during the 2008-2009 period. Response SMF, Exh. A at ¶ 14; Exh. 13 at UNITED-0004380. Thompson stated that these 7 pilots, one of whom was Mr. Bumpus, were "allowed to remain on furlough" after the 2007 recall because they "did not have their medical" certifications at that time and were subsequently allowed to be furloughed a second time in 2008-2009. *Id.* at UNITED-0004380. On this basis, UAL determined that Mr. Bumpus, among the others, would have his recall date calculated ten years from the date of his *second furlough* to March 2, 2019. *Id.*; Response SMF, Exh. A at ¶ 14; Exh. 13 at UNITED-0004321. In fact, on November 3, 2015, Kennedy asked Thompson about Mr. Bumpus' recall date specifically, to which Thompson replied tersely that UAL already determined Mr. Bumpus' recall date extended to March 2, 2019, and there was no need to re-evaluate. Response SMF, Exh. A at ¶ 16; Exh. 15.

Carlson testified Thompson's assessment of Mr. Bumpus' recall date did comport with the data in Mr. Bumpus' employee profile, which Carlson did *not* review or rely on, and that Thompson was responsible for determining pilot recall rights. Response SMF, Exh. A at ¶ 8; Exh. 7 at 92:2-24; 93:1-2. Following these internal exchanges, Kennedy proudly announced to Mr. Bumpus that he and UAL's Labor Relations department had investigated the matter (unlike Carlson and Loesel) and concluded that his recall window extended to March 2, 2019. Response SMF, Exh. A at ¶ 22; Exh. 21 at UNITED-0001068.

Even after Carlson reached his own contrary conclusion, UAL Coordinator of Flight Operations and Pilot Hiring Programs Alexa Dolan reconfirmed UAL's position regarding Mr. Bumpus' recall rights on February 1, 2019. *Id.* at UNITED-0001067. The fact that UAL offered Mr. Bumpus recall yet again on February 7, 2012, at which time Mr. Bumpus elected to take military deferment and submitted military orders to UAL in support of that deferment, which UAL confirmed, and once more on September 6, 2013—a year and a half *after* Carlson concluded Mr. Bumpus had been terminated—further supported Kennedy, Thompson, and Dolan's conclusions. Response SMF, Exh. A at ¶¶ 9-13, 33; Exh. 8- Exh. 12; Exh. 32. For these reasons, at Mr. Bumpus' First-Level Grievance Hearing on April 8, 2021, Denver Chief Pilot Rob Biddle found Mr. Bumpus' recall rights extended to March 2, 2019. ECF 85-7. Captain Biddle was the only arbitrator or grievance hearing officer in the history of this case to make a decision regarding the expiration of Mr. Bumpus' rights.[1] The foregoing conclusively establishes both a dispute of fact regarding whether Mr. Bumpus' rights extended to March of 2019, and

[1] UAL's footnote 6 claiming that "Bumpus has now litigated and lost his contractual recall rights claim in a final and binding arbitration before a System Board of Adjustment" is a patent misrepresentation. The System Board of Adjustment made *no finding* regarding the date of Mr. Bumpus' termination. Rather, the System Board of Adjustment determined *only* that Mr. Bumpus' claim was untimely—a fact which UAL expressly concedes. *See* ECF 85, ¶ 62.

profound inconsistencies regarding UAL's position regarding Mr. Bumpus' termination. Thus Mr. Bumpus has raised sufficient evidence to support the inference that UAL was motivated in part by anti-military animus, which UAL cannot affirmatively disprove.

Nor do UAL's arguments regarding Carlson's status as a veteran or his stated reasons for terminating Mr. Bumpus carry water. First, as discussed above, discrimination claims rarely can be proven by direct evidence because employers will seldom state in writing that their adverse employment decisions are motivated by discriminatory animus. *Supra*, § (III). Therefore, it is irrelevant that Carlson's "contemporaneous email discussions with Loesel" profess to remove Mr. Bumpus because he "lacked any contractual reemployment rights." Second, the Supreme Court expressly holds that an employer's membership in a protected class does *not* negate the inference of discriminatory intent as a matter of law. *Oncale v. Sundowner Offshore Servs*., 523 U.S. 75, 78-79 (1997). *Mullins v. Goodman Distrib., Inc.*, upon which UAL bases its argument, is inapposite as merely stating as *dicta* it would be unreasonable to infer military animus simply because the employer, who happened to be a veteran as well, disliked plaintiff. *Mullins v. Goodman Distrib., Inc.*, 694 F. Supp. 2d 782, 791 (S.D. Ohio 2010).

**2. Pilots who did not serve were treated more favorably than Mr. Bumpus**

UAL again misstates the record in claiming that, aside from Mrs. Purdy, Roger Suro is the only comparator pilot Mr. Bumpus has identified. Regardless, an employer is not entitled to unilaterally identify comparator employees. *See Bobo v. UPS*, 665 F.3d 741, 759 (6th Cir. 2012). Rather, in addition to Mrs. Purdy, Plaintiff has identified several other pilots who did not serve in the military and were treated more favorably than him. For example, pilot Heather Hackler was hired in the summer of 2000, furloughed shortly after September 11, 2001, "separated" at end of her original 7-year recall window in 2008, then reinstated and re-furloughed the same day, all

exactly as Mr. Bumpus was. Response SMF, Exh. A at ¶ 19; Exh. 18. Unlike Mr. Bumpus, however, UAL honored and recognized Mrs. Hackler's "valid contractual recall rights" ten years from the date of her second furlough. *Id.* The exact same situation is also true of pilot Joseph Rutkowski. Response SMF, Exh. A at ¶ 18; Exh. 17.

Most egregiously, pilot Lisa Clark was hired 9 months after Mr. Bumpus in March of 2001, furloughed in October of 2001, separated, rehired, and furloughed a second time all 7 years to the day after her first furlough, and then *recalled* to UAL 9 years later in 2017, where she continues to fly as a pilot today. Response SMF, Exh. A at ¶ 20; Exh. 19. Exactly like Mr. Bumpus, she had not flown even one minute for UAL between 2001 and the time she was recalled in 2017, and exactly like Mr. Bumpus she was "double furloughed" directly off her first furlough. The only difference between Mrs. Clark and Mr. Bumpus is that he served in the military in the interim, and she did not. *Id.* Remarkably, Rutkowski, Hackler, and Clark *all* were part of the group of 7 pilots UAL expressly allowed to remain on furlough in 2008-2009 identified in Thompson's November 2015 email to Kennedy. *Compare* Response SMF, Exh. A at ¶ 29; Exh. 28 *with* Response SMF, Exh. A at ¶ 14; Exh. 13 at UNITED-0004382.

Finally, pilot John Becker was hired June 11, 2000, then furloughed March 2, 2002, the very same dates as Mr. Bumpus. Response SMF, Exh. A at ¶ 6; Exh. 5. Like Mrs. Purdy, in 2007 he was permitted to return from furlough and go on a personal leave of absence the very same day. *Id.* He returned from that leave a year later, in 2008, only to go back on personal leave the same day. *Id.* He then returned from his second personal leave a year later in 2009 and was furloughed a second time the next day. *Id.* UAL honored his second furlough date to April 22, 2016, then separated him, rehired him, and furloughed him a *third* time all on the same day on April 22, 2016. *Id.* After being granted a third personal leave of absence in April of 2019, he

returned once more in April 2020 only to go on a fourth personal leave in July of 2020. Response SMF, Exh. A at ¶ 6; Exh. 5. In fact, in April of 2019, Paul Carlson personally requested Defendant return Mr. Becker from furlough and start him on a personal leave of absence instead. *Id.* Thereafter, he was permitted to retire from UAL having never returned from this fourth personal leave of absence. *Id.*

The only appreciable difference between Mr. Bumpus and these four pilots is that Mr. Bumpus served in the military throughout the period from the first furloughs through 2013, while they did not.[2] Whether these pilots are similarly situated to Mr. Bumpus such that they constitute circumstantial evidence of discriminatory intent is a question of fact for the jury. *See Bobo*, 665 F.3d at 757. Moreover, UAL cannot affirmatively prove they would have treated Mr. Bumpus disparately from these pilots in the absence of his service. To the contrary, Thompson testified that, like Mr. Bumpus, Mrs. Clark did not work a day for UAL from 2001 until her return in 2017. Response SMF, Exh. A at ¶ 24; Exh. 23 73:20-24. She likewise agreed that Mrs. Clark was in the exact same position as Mr. Bumpus up until Mrs. Clark was permitted to return to fly in 2017. *Id.* at 113:12-24, 114:1-22. Thompson offered no explanation for the disparity. *Id.* Thus, because Mr. Bumpus has identified several comparator pilots who did not serve and were treated more favorably than him, summary judgment is improper.

Finally, the fact that Defendant may not have discriminated against Roger Suro or that UAL may hire thousands of other veterans is irrelevant because "there is no token exception to anti-discrimination law." *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 587 (7th Cir. 2011). The Seventh Circuit categorically rejects the argument that evidence other employees of the same protected class were not discriminated against negates the inference of discriminatory

[2] Nor are these the only non-military comparator pilots Mr. Bumpus has identified. Others include Nathan Montgomery and Alexander Nenadovic. Response SMF, Exh. A at ¶¶ 31-32; Exh. 30; Exh. 31.

intend. *Id.* "Instead, '[t]he principal focus of the statute is the protection of the individual employee, rather than the protection of the minority group as a whole.'" *Id.* Discrimination against one protected employee violates the statute, no matter how well another protected employee is treated. *Id.* at 587-88.

**3. UAL's adverse employment action occurred contemporaneously to Mr. Bumpus' service**

UAL finally argues that it could not have discriminated against Mr. Bumpus because his last date of service was in 2013. ECF 87, § (III)(A)(2). In support, Defendant cites *McConnell v. Anixter*, Inc., 944 F.3d 985 (8th Cir. 2019). *McConnell*, however, is inapposite. There, the principal issue was that the employee's military service ended four years *before he was ever hired. Id.* at 990. Here, though Mr. Bumpus' service ended in 2013, several years before UAL discriminated against him in 2019, Defendant is adamant that he was terminated in March of 2012. *See, e.g.* Response SMF, Exh. A at ¶ 8; Exh. 7 at 61:11-14 (reiterating that UAL concluded Mr. Bumpus' recall rights expired on March 2, 2012). At that time, and until 2013, Mr. Bumpus was on active-duty military orders, and UAL was aware of the same. Response SMF, Exh. A at ¶¶ 9-13; Exh. 8-Exh. 12. Therefore, contrary to UAL's position, the "adverse employment action" of removing Mr. Bumpus from the seniority list happened *contemporaneously* to his military service, which constitutes circumstantial evidence that his military service was at least "a motivating factor" in UAL's adverse employment action, generating a dispute of fact, and precluding summary judgment. *See Bobo v. UPS*, 665 F.3d 741, 754 (6th Cir. 2012).

## IV. Conclusion

For the reasons stated herein, Plaintiff William Michael Bumpus respectfully requests the Court deny Defendant United Airlines, Inc.'s Motion for Summary Judgment in its entirety, and for any other relief the Court deems just and equitable.

Dated: April 21, 2026

Respectfully submitted,

/s/Michael Haeberle
Michael Haeberle (6309164)
Garrett von Schaumburg (6324804)
Patterson Law Firm, LLC
200 W. Monroe St, Suite 2025
Chicago, IL 60606
Phone: 312-223-1699
Fax: 312-223-8549
mhaeberle@pattersonlawfirm.com
gvonschaumburg@pattersonlawfirm.com
*Local Counsel*

and

**SEHAM, SEHAM, MELTZ & PETERSEN, LLP**
Lee Seham, Esq. (*pro hac vice* pending)
lseham@ssmplaw.com
Stanley Silverstone, Esq.
Ssilverstone@ssmplaw.com
Tel. (914) 997-1346
199 Main Street, Seventh Floor
White Plains, NY 10601

*Attorneys for Plaintiff*
*William Michael Bumpus*