**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| WILLIAM MICHAEL BUMPUS,<br><br>Plaintiff,<br><br>v.<br><br>UNITED AIRLINES, INC.,<br><br>Defendant. | Case No. 1:23-cv-03900<br><br>Hon. Sharon Johnson Coleman |

**UNITED AIRLINES, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS


**Page**

I. PRELIMINARY STATEMENT ..... 1

II. ARGUMENT ..... 2

A. Bumpus's 2007 Claim Fails Because Bumpus Elected to Accept Recall, Rather Than Request a Leave ..... 2

1. Bumpus Identifies No Comparator Who Received Personal Leave After Accepting Recall ..... 3

2. Bumpus Did Not Report for Duty in 2007, as Required to Accept Recall ..... 5

B. Bumpus's 2019 Claim Fails Because He Offers Zero Evidence of Anti-Military Animus ..... 6

1. Bumpus's Employment Ended in 2017, Four Years After He Retired From The Military and After His Union Initiated His Removal ..... 7

2. United's Employment Decisions Do Not Remotely Suggest Anti-Military Animus ..... 10

3. Civilian Comparators Confirm That Bumpus Was Removed Due to the Expiration of His Recall Rights ..... 11

III. CONCLUSION ..... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Wal-Mart Stores, Inc.*,
324 F.3d 935 (7th Cir. 2003) .......... 8, 10

*Anderson v. Street*,
104 F.4th 646 (7th Cir. 2024) .......... 12

*Bruno v. City of Crown Point, Ind.*,
950 F.2d 355 (7th Cir. 1991) .......... 8

*Mullins v. Goodman Distrib., Inc.*,
694 F. Supp. 2d 782 (S.D. Ohio 2010) .......... 9

*Oncale v. Sundowner Offshore Services*,
523 U.S. 75 (1998) .......... 9

*Patterson v. Avery Dennison Corp.*,
281 F.3d 676 (7th Cir. 2002) .......... 4

## I. PRELIMINARY STATEMENT

Plaintiff Bumpus's discrimination claims under USERRA (Count IV) and ISERRA (Count V) fail on the undisputed record, and Bumpus's Opposition (ECF 92) ("Opp.") does nothing to change that result. Bumpus's claims rise and fall on whether United, for whom Bumpus last flew as a pilot 25 years ago, acted with anti-military animus. Bumpus fails to raise a single fact which suggests that United treated Bumpus unfavorably *because of* his military service. That is fatal to his discrimination claims as to both 2007 and 2019.

Bumpus alleges that, due to his military service, United refused to extend him a personal leave in 2007 and refused to reemploy him in 2019. But the determinative points are remarkably clear and undisputed with respect to both time periods.

As to 2007, the black and white text of Bumpus's recall return form shows that he affirmatively *declined* to elect a personal leave or military leave in 2007, and that he instead selected a recall to United, for which he then failed to appear. An employer does not conceivably discriminate by giving an employee what he asks for (recall) instead of an option he declined (personal leave). At his prior arbitration, Bumpus testified that he failed to request a personal leave (or medical or military leave), and conceded that this distinguished him from Janine Purdy, the main comparator he now attempts to invoke. The 2007 claim is a dead end for Bumpus.

As to 2019, Bumpus waits until the final paragraph of his Opposition to address the glaring and fatal fact that he retired from the military *six years before* this alleged adverse reemployment action. No such claim can credibly survive summary judgment. That is particularly true here, where Bumpus's union (not United) initiated his removal from the seniority list based on a review process that also addressed two non-military pilots, Angie Taylor ("Taylor") and Rick Sniderhan ("Sniderhan"), and where the decision-maker at United, himself a

service-member, joined the union's conclusion that Bumpus lacked contractual recall rights. When Bumpus asked two years later, in 2019, to return to United after nearly two decades away from flying, the Company and union communicated this legitimate, non-discriminatory basis for the denial of his request. In his Opposition, Bumpus offers only disconnected arguments about peripheral points and non-probative comparators in the decades-long record, but not one of those arguments remotely suggests that the decisions in 2017 or 2019 (years after Bumpus had left the military) were motivated by anti-military animus.

As his Opposition confirms, Bumpus cannot offer evidence of anti-military animus, nor can he meaningfully dispute that United would have made the same decisions regardless of Bumpus's military service. Summary judgment should be granted to United on both of Bumpus's remaining claims.

## II. ARGUMENT

### A. Bumpus's 2007 Claim Fails Because Bumpus Elected to Accept Recall, Rather Than Request a Leave

In support of his 2007 discrimination claim, Bumpus asserts that United exhibited anti-military animus by failing to offer Bumpus a personal leave in 2007. Opp. at 3. But Bumpus never requested a personal leave in 2007. Indeed, as steadfastly ignored by Bumpus, he *affirmatively accepted recall in 2007, in lieu of taking a leave*, as explicitly shown in the 2007 Recall Response Form below:

UNITED

A STAR ALLIANCE MEMBER

**RECALL RESPONSE FORM**

_X_ I accept recall.

____ I accept recall and wish to be placed on a Personal Leave of Absence to honor a previously approved employment contract (see Section 7-D-1). **You must submit a copy of the approval letter from your domicile, approving the employment contract.**
Requested leave period: __________

____ I accept recall and wish to be placed on Military Leave of Absence (see Section 12-D). Please supply a copy of your Military Orders.
Requested leave period: __________

____ I accept recall and wish to be placed on a Short Personal Leave of Absence.(see Section 12-A). **Humanitarian reason only. Please provide details**
Requested leave period: __________

____ I decline recall and wish to resign my employment with United Airlines.

Name: William M. Bumpus File Number: 262414

United's Statement of Undisputed Material Facts ("SMF") at ¶ 16. The premise that United should have overridden Bumpus's own election and placed him on leave when he affirmatively accepted recall — or, alternatively, that Bumpus's acceptance of recall itself should have otherwise resulted in him receiving leave — is unsupportable. United did not conceivably discriminate against Bumpus when it gave him what he requested (a recall slot, for which he then failed to appear) instead of something else (personal leave).

### 1. Bumpus Identifies No Comparator Who Received Personal Leave After Accepting Recall

Bumpus argues that a question of material fact exists as to whether United "acted with discriminatory intent in refusing to offer Mr. Bumpus a personal leave of absence" because other, non-military pilots received personal leaves. Opp. at 5. Bumpus first asserts that pilots could take a personal leave without requesting it. *Id.* at 4. But Bumpus fails to offer any evidence supporting this illogical assertion. And more critically, Bumpus misstates the relevant inquiry entirely: to support his claim, Bumpus would need to demonstrate that a pilot could be granted leave without requesting it *when that same pilot communicated a different recall*

*response to United.*[1]

In support of his argument, Bumpus cites to comparators who were placed on personal leave, but who did not elect to accept recall, unlike Bumpus. For example, Bumpus raises Janine Purdy ("Purdy") as an example, claiming that "there is no evidence that [she] requested a personal leave of absence in 2007." Opp. at 5. Remarkably, as noted in United's opening motion but unmentioned in Bumpus's Opposition, Bumpus previously acknowledged at his arbitration that Purdy was different from him *precisely because* she availed herself of a personal leave. ECF 87 at 12 ("Mr. Bumpus knew that her situation was different than his, and that a personal or maternity leave of absence was an avenue that he would not have had.") (citing SMF at ¶ 56). Further, Bumpus offers no evidence that Purdy *failed to* request a personal leave in 2007, much less that she received one without requesting it. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (To demonstrate that an "employee is 'similarly situated,' a plaintiff must show that there is someone who is directly comparable to [him or] her in all material respects.").

Bumpus next points to the employee profile of a different comparator, John Becker ("Becker"), which shows that he was removed from furlough and placed on a personal leave by United—again without evidence as to whether Becker requested this action. Bumpus does not even suggest (much less demonstrate) that Purdy or Becker elected to accept recall only to be placed on leave instead, as necessary to support his 2007 claim. Whether or not these pilots took a leave and the processing of these leaves by United is irrelevant and, at the very least, provides no support for Bumpus's theory that United was motivated by anti-military animus in "denying"

[1] Bumpus's reliance on Section 12-A of the 2000 CBA is therefore misplaced twice over. While Section 12-A permits United to grant a leave of absence for "any reason deemed adequate by [UAL]," Opp. at 4, it does not require United to do so, especially in this unique circumstance, where Bumpus affirmatively selected an option other than personal leave on his recall form.

Bumpus a personal leave.

Bumpus next argues that United "refused to put [Bumpus] on either medical or military leave when he accepted recall in 2007," even though Bumpus once again did not request either medical or military leave and accepted his 2007 recall instead. Opp. at 6. This argument is foreclosed by Bumpus's own complaint, which alleges that United discriminated against him in 2007 by not extending a *personal* leave — not a medical or military leave. Second Amended Complaint ("SAC") ¶ 118 ("United refused to extend to Bumpus a personal leave of absence."); *see also* ECF 49 at 8.[2] Bumpus's argument only underscores that, even now, he cannot identify the type of leave he contends United should have provided. Indeed, the ambiguity this argument creates only bolsters the conclusion that United could not have known Bumpus's preferences with respect to his employment—short of a recall response requesting the same. Given that it remains unclear, 19 years later, which leave Bumpus supposedly desired, United's failure to provide Bumpus a leave (when he specifically accepted recall) cannot be deemed discriminatory.

### 2. Bumpus Did Not Report for Duty in 2007, as Required to Accept Recall

Finally, seemingly in the alternative, Bumpus argues that he fulfilled the requirements of reporting for duty after accepting recall in 2007. Opp. at 6. But Bumpus has not—and cannot—dispute that he did not show up for work or required training at United. SMF at ¶ 22. While Bumpus asserts that he "presumably … met the requirements of the [collective bargaining agreement ("CBA")] and recall notice by responding and disclosing his medical condition," Opp. at 7, his own union representative, Air Line Pilots Association ("ALPA"), explicitly disagreed with this conclusion. Indeed, it was ALPA's view that "[t]o retain their place on the seniority list

[2] This argument also fails given that: (1) the recall form included a military leave option that Bumpus did not select, and (2) Bumpus conceded at his prior arbitration that he did not request either a medical or military leave at the time of his 2007 recall. SMF at ¶¶ 16, 20.

pilots had to notify the Company within fourteen (14) days from receipt of recall that they desire to return to active service, *and then actually return to service*." *See* SMF at ¶ 24 (emphasis added). It was further ALPA's view that Bumpus's failure to report should have resulted in Bumpus's termination in 2007. *Id.* (Bumpus failed to provide "evidence that [he] returned from furlough and [that his] status with United should have been changed from furlough to some other status in 2007, thereby retaining [his] place on the seniority list."). If anything, by retaining Bumpus after he failed to report for duty, United afforded him treatment more favorable than what the CBA required. And in any event, even if Bumpus *had* fulfilled the requirements for accepting recall, Bumpus fails to explain why his recall acceptance should have resulted in United placing him on a leave instead.[3]

For these reasons, Bumpus has failed to raise a dispute of material fact as to 2007.

### B. **Bumpus's 2019 Claim Fails Because He Offers Zero Evidence of Anti-Military Animus**

Bumpus speculates that United refused to reemploy him in 2019 due to military animus. In support of this claim, Bumpus argues that United actually terminated him in 2012; that inconsistencies in United's employment decisions amount to anti-military animus; and dissimilar civilian pilots were treated more favorably. But these haphazard arguments, and the facts raised in support of them, fail to disturb two key conclusions: (1) United removed Bumpus from the United pilot seniority list in 2017, upon request from ALPA and for the explicit, non-discriminatory reason that Bumpus lacked the necessary contractual recall rights to remain a pilot at United; and (2) United denied Bumpus's 2019 "reemployment" request because he was

---

[3] Bumpus's reliance on the employee profile of Robert Gerner (Opp. at 7) is a non sequitur. The fact that Gerner's profile reflects a separation for "failure to return from leave" does not create a genuine dispute as to whether Bumpus reported for duty, nor does it bear on whether United acted with anti-military animus.

no longer employed at United. Further, Bumpus cannot dispute that United would have treated him the same had he been a civilian without prior military service, as demonstrated by the removal of two civilian pilots, Sniderhan and Taylor, during the very same 2017 seniority list review.

### 1. Bumpus's Employment Ended in 2017, Four Years After He Retired From The Military and After His Union Initiated His Removal

In his Opposition, Bumpus puts forward the eyebrow-raising argument that the relevant adverse employment action for his *2019* reemployment claim occurred in *2012*—a position directly at odds with his own testimony and this Court's May 2, 2025 dismissal order. SMF at ¶ 32; ECF 49 at 8; Opp. at 15. Bumpus wrongly claims that it is United's position that Bumpus "was terminated in March of 2012." Opp. at 15. But as United made clear in its opening motion, ECF 87 at 9-11, Bumpus was processed off United's seniority list in *2017*, four years after he retired from the military and two years before he sought "reinstatement" from United in 2019.

The Opposition does not dispute that Bumpus's union "initiated the removal" of Bumpus from the seniority list in 2017, because the union did not "see a reason for [his] continued presence on the list" – that terminology and concession comes directly from Bumpus in post-arbitration briefing. SMF at ¶¶ 28-29. Nevertheless, Bumpus seeks to discount the 2017 United-ALPA email exchange that prompted his removal from the seniority list. Bumpus claims that this email exchange was "brief," that the relevant decisionmaker at United, Paul Carlson ("Carlson"), reviewed and shared "only a partial screenshot of Mr. Bumpus's Pilot Records," and that Carlson did "nothing to investigate Mr. Bumpus' situation" beyond reviewing Bumpus's employee portal. Opp. at 8-9. Bumpus further takes issue with Carlson's lack of experience with various furloughs in 2008-2009, along with the distribution of military and medical leaves

at United. *Id.* at 9.

In attacking United's 2017 decision in this manner, Bumpus wrongly misdirects. The only relevant inquiry is whether United acted with anti-military animus. *See Bruno v. City of Crown Point, Ind.*, 950 F.2d 355, 364 (7th Cir. 1991) ("The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."). Indeed, even if "everyone else at United who encountered the issue agreed at all times Mr. Bumpus's recall rights extended to March 2, 2019" (which they did not), the undisputed decisionmaker at issue, Paul Carlson, did not agree with this point of view and his disagreement provides no ground for inferring anti-military animus. *See* Opp. at 10; *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 940 (7th Cir. 2003) (no pretext for discrimination where employer genuinely believed rationale for termination).

With respect to United's decision, Bumpus has failed to raise plausible evidence to rebut two decisive points: Bumpus's own union "initiated" his removal, and the precise basis for United's decision—the expiration of Bumpus's recall rights—rules out any circumstantial assertion of discrimination. *See* SMF at ¶ 28. In September 2017, Jeffrey Loesel, ALPA's Senior Labor Relations Counsel, contacted Carlson about Bumpus's employment status. *Id.* After a review of the pilot seniority list, Loesel did not "see a reason for [Bumpus's] continued presence on the list" and "prompt[ed] United to remove [him]" because Bumpus had no valid contractual entitlement to remain on the list. *Id.* at ¶¶ 29, 34. In its opening motion, United argued that no evidence suggests ALPA initiated this removal for anti-military reasons, ECF 87 at 10, and Bumpus's failure to address this argument in his Opposition concedes this critical point. Bumpus asserts that "it is irrelevant that Carlson's 'contemporaneous email discussions with Loesel' profess to remove Mr. Bumpus because he 'lacked any contractual reemployment

rights.'" Opp. at 12. But as discussed, Bumpus's lack of contractual recall rights was precisely *the non-discriminatory reason for United's decision*, as laid out in these "contemporaneous email discussions."

In response to the further point that United's decisionmaker, Paul Carlson, was himself a military veteran, Bumpus argues that shared protected-class membership does not categorically preclude a discrimination claim, citing *Oncale v. Sundowner Offshore Services*, 523 U.S. 75 (1998). Opp. at 12. United does not argue otherwise. United's point is not that Carlson's veteran status provides categorical immunity from a discrimination claim — it is that Carlson's veteran status, considered alongside the undisputed facts that ALPA initiated the removal, that Carlson relied on the same contractual rationale applied to non-military pilots Taylor and Sniderhan, and that Carlson's contemporaneous communications reference only contractual recall rights, renders the inference of anti-military bias implausible. *See Mullins v. Goodman Distrib., Inc.*, 694 F. Supp. 2d 782, 791 (S.D. Ohio 2010). Bumpus's characterization of *Mullins* as "dicta" (Opp. at 12) is unavailing — in addressing the veteran-decisionmaker evidence in the context of its discrimination analysis, the court observed: "[i]t *bears emphasis* that [the decisionmaker] himself was an Air Force veteran." *Mullins*, 694 F. Supp. 2d at 791 (emphasis added).

But even if Carlson was not a veteran, United's argument would be the same. It is undisputed that United terminated Bumpus's employment in 2017 at the invitation of Bumpus's union, and Bumpus's union encouraged United to take this action because it believed Bumpus's contractual recall rights had expired. It is further undisputed that Carlson made his decision based on his review of Bumpus's Pilot Records portal and his agreement with ALPA's assessment that Bumpus lacked recall rights. SMF at ¶ 32. That honest belief is sufficient to

establish a non-discriminatory rationale that defeats Bumpus's claim. *See Adams*, 324 F.3d at 940.[4]

### 2. United's Employment Decisions Do Not Remotely Suggest Anti-Military Animus

Bumpus claims United discriminated against him in 2019 because of prior military service when United declined to "reinstate" him. Opp. at 8. But as detailed above, United's decision in 2019 was based entirely on Bumpus's removal from the pilot seniority list in 2017, for reasons having nothing to do with his status as a former servicemember (having retired in 2013). In his Opposition, Bumpus tries to string together isolated points in the decades-long record to suggest "inconsistencies" between United's conduct and the proffered reason for its actions in "refusing to reinstate Mr. Bumpus in 2019." *Id.*

None of Bumpus's evidence conceivably suggests a discriminatory motive. For example, Bumpus focuses on a series of 2015 email exchanges at United concerning the employment status of seven pilots, including Bumpus and Sniderhan, who had incurred disqualifying medical conditions while on furlough. Opp. at 10. But United's position vis-à-vis these pilots in 2015 is irrelevant, because this email exchange once again does not raise Bumpus's military status and United did not process Bumpus off the seniority list until two years later. In any event, Bumpus was not similarly situated to these pilots because contemporaneous United records (i.e. the Company's furlough report from May 2016) showed that every single United pilot in the Company's furlough report had a furlough effective date of September 2008 or later, except for

[4] The fact that Bumpus then lost his contractual recall rights claim in a final and binding System Board of Adjustment arbitration, pursuant to the Railway Labor Act, further undermines his position. Bumpus's assertion that the System Board "determined only that Mr. Bumpus' claim was untimely," Opp. at 11 n.1, does not help him – Bumpus failed to timely grieve the very contractual recall-rights claim on which his discrimination theory depends, in the forum that has mandatory and exclusive jurisdiction over such a contractual claim. ECF 87 at 10 n.6.

Bumpus, Sniderhan, and Taylor—the three pilots who were ultimately processed off United's seniority list in 2017. SMF at ¶¶ 29, 31, 34-35. Stated otherwise, every single pilot in the Company's contemporaneous furlough report showed a furlough period of less than 10 years (the maximum period for valid recall rights under the CBA at the time), except for 3 pilots: Bumpus, Sniderhan, and Taylor. *Id.* at ¶¶ 8, 31. None of the asserted inconsistencies raised by Bumpus rebut this overriding support for Bumpus's legitimate, non-discriminatory removal in 2017.

### 3. Civilian Comparators Confirm That Bumpus Was Removed Due to the Expiration of His Recall Rights

Pointing to a handful of alleged comparators, Bumpus argues that United "has not affirmatively proven it would have taken the same actions in absence of [Bumpus'] service." Opp. at 4. But United has shown that it did, in fact, take the exact same action with respect to Taylor and Sniderhan, the two civilian comparators who were processed off United's seniority list due to expired recall rights in 2017. These civilian comparators not only demonstrate that United was not motivated by military animus when processing Bumpus off the seniority list in 2017, but that United would have made the decision to process Bumpus off the list *regardless* of whether he had performed military service. ECF 87 at 10. Bumpus has no response. Indeed, in his Opposition, Bumpus fails to *even mention* either Taylor or Sniderhan, though these two pilots were the centerpiece comparators in United's opening motion.

Instead, Bumpus raises four inapposite comparators—Heather Hackler ("Hackler"), Lisa Clark ("Clark"), John Becker ("Becker"), and Joseph Rutkowski ("Rutkowski")—whose employment status was not at issue at the time United processed Bumpus off the seniority list. Bumpus claims that "[t]he only appreciable difference between Mr. Bumpus and these four pilots is that Mr. Bumpus served in the military throughout the period from the first furloughs through 2013, while they did not." Opp. at 14. Not so. As an initial matter, Hackler and Rutkowski

were also terminated—though at a separate time—for expiration of their recall rights, rather than reinstated. And Becker returned from his 2002 furlough to a personal leave, unlike Bumpus. *See supra* at 2-3; ECF 93 at Ex. 5. And once again, all of these pilots showed an effective furlough date of September 2008 or later in the Company's May 2016 furlough report, unlike the then-expired furlough dates for Bumpus (March 2, 2002), Sniderhan (June 1, 2003), and Taylor (August 30, 2003). SMF at ¶¶ 8, 31. The same is true for Clark, whose effective furlough date was recorded as April 20, 2012 (well within the 10-year period for valid recall rights). *See id.* And critically, Clark was not among the pilots identified by ALPA in the 2017 seniority list review that discussed the removal of Bumpus, Taylor, and Sniderhan based on their expired recall rights.[5] *Id.* at ¶¶ 28-30, 34-35. Bumpus's selective reliance on dissimilar comparators does not come close to establishing anti-military animus, and the on-point, civilian comparators, Taylor and Sniderhan, affirmatively rebut his assertions. *See Anderson v. Street*, 104 F.4th 646, 653 (7th Cir. 2024) ("Comparators 'must be directly comparable to the plaintiff in all material respects.'").

For these reasons, Bumpus has failed to raise a dispute of material fact as to 2019.

## III. CONCLUSION

For these reasons, the Court should grant summary judgment to United as to Counts IV and V, Bumpus's only remaining claims.

[5] During his arbitration, Bumpus previously raised one other pilot, Roger Suro, as a comparator under his now-abandoned contractual theory. *See* SMF at ¶ 54. Tellingly, under his new theory of anti-military discrimination, Bumpus now discounts Suro's relevance as a comparator. Opp. at 14. Given that Suro was recalled from *military leave* in 2019, United's actions with respect to Suro only further rebut Bumpus' theory of discrimination. SMF at ¶ 54.

Dated: May 5, 2026

Respectfully submitted,

/s/ M. Tristan Morales
M. Tristan Morales (*admitted pro hac vice*)
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006
Tel: 202-383-5300
Email: tmorales@omm.com

Jason Zarrow (*admitted pro hac vice*)
O'Melveny & Myers LLP
400 South Hope St., 19th Floor
Los Angeles, CA 90071
Tel: 213-430-8367
Email: jzarrow@omm.com

Marnie A. Holz
Greenspoon Marder LLP
227 W. Monroe St., Ste 3950
Chicago, Illinois 60606
Tel: 773-395-1623
Email: marnie.holz@gmlaw.com

*Attorneys for Defendant United Airlines, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on May 5, 2026, I caused a true and correct copy of the foregoing Reply Memorandum in Support of United Airlines, Inc.'s Motion for Summary Judgment to be filed with the Clerk of the Court using the CM/ECF system.

Respectfully submitted,

*/s/ M. Tristan Morales*

M. Tristan Morales (*admitted pro hac vice*)
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006
Tel: 202-383-5300
Email: tmorales@omm.com

*Attorneys for Defendant*
*United Airlines, Inc.*