**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WILLIAM MICHAEL BUMPUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 23-cv-3900 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| UNITED AIRLINES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff William Michael Bumpus ("Bumpus") was a pilot for Defendant United Airlines, Inc. ("United") who took a military leave of absence to serve in the Air Force Reserves. About half a year later, while he was serving in the military, United placed Bumpus on furlough. Bumpus alleges that United then discriminated against him owing to his military background, in violation of the Uniformed Service Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4311, and equivalent Illinois state law, when it did not place him on military or medical leave after it recalled him in 2007; and also when United did not reinstate Bumpus as an employee in 2019. Before the Court today is United's motion for summary judgment on all remaining claims. Dkt. 84. The Court grants the motion because Bumpus has not pointed to any evidence implying that United's actions were motivated by anti-military animus. Because Bumpus has not met his burden of production, United is entitled to judgment as a matter of law.

## BACKGROUND

### Factual Background

Unless otherwise noted, the following facts are drawn from the undisputed elements of the parties' respective statements of facts and are deemed admitted. *See* dkt. 85 [hereinafter DSOF]; dkt.

93 at *1–25 [hereinafter DSOF Resp.]; dkt. 93 at *25–32 [hereinafter PSOF].[1]

Defendant United Airlines, Inc. hired Plaintiff Willaim Michael Bumpus as a pilot on June 11, 2000. On September 28, 2001, Bumpus took an approved military leave of absence to serve in the Air Force Reserve. In March 2002, United placed Bumpus on furlough, along with a large number of other United pilots. Ramos suffered a stroke on September 5, 2006, dkt. 35 ¶ 21, while still serving with the Air Force Reserves, that resulted in his hospitalization and in the loss of his Federal Aviation Administration ("FAA") First-Class Medical Certificate. No pilot may fly for United without a valid FAA medical certificate.

About eight months later, in May 2007, United issued a recall notice to Bumpus. The notice permitted the recipient to accept the recall; to accept the recall but request to be placed on personal or military leave; or to decline the recall and resign from employment with United. Bumpus accepted the recall, but he did not request to be placed on leave. Bumpus also informed United about his recent stroke. Bumpus did not report for work or training after accepting his recall, although there also is no evidence that he was directed to report for work or training. In January 2008, United informed Bumpus that he would remain on furlough and that his recall rights would now expire on March 1, 2012, if he did not obtain medical clearance to fly. He did not obtain medical clearance by that date.

Five years later, on or around September 12, 2017, ALPA, the union representing United pilots, was attempting to clean up some irregularities in the United pilot seniority list. In the process, an ALPA attorney inquired about Bumpus's work history and placement on the list. A pilot without recall rights may not remain on the seniority list. *See* dkt. 85-3 at 361:13–23, 366:10–15; dkt. 85-11 § 7-E. Following a review, ALPA identified Bumpus as appropriate for removal from the seniority list

[1] Bumpus's response to United's statement of facts also contains his own statement of facts. Because the paragraph numbering resets, the Court will use "DSOF Resp." for citations to Bumpus's response to United's statement of facts, and "PSOF" for citations to Bumpus's own statement of facts. United did not respond to Bumpus's statement of facts.

and as similarly situated to two other pilots, without any prior military service, who had recently been removed from the list. Paul Carlson, United's Managing Director of Manpower Planning and Contract Administration, and a Navy veteran, agreed to ALPA counsel's proposal to remove Bumpus. Emails between United and ALPA from this time discuss removing Bumpus because his recall rights had allegedly expired in 2012.

There is an irregularity in United's records that bears mentioning, as it factors heavily in Bumpus's arguments. According to the employee profile for Bumpus, United's records indicate that he briefly returned to active service with United on March 2, 2009, which is in the period between United's extension of Bumpus's furlough and the deadline it gave him to obtain medical clearance. Dkt. 93-17. The records show that he was then placed back on furlough the same day.[2] *Id.* Based on this re-furlough date, as Bill Kennedy (Senior Manager of Pilot Hiring Programs and Furlough Return Coordinator) informed Bumpus in 2015, that his recall rights would expire in March 2019, based on a CBA provision providing ten years of recall rights from the start of a pilot's most recent furlough. *See, e.g.,* PSOF ¶ 8; dkt. 93-22 at UNITED-0001067.

On January 31, 2009, Bumpus contacted United and ALPA to seek reemployment and/or reinstatement as a pilot. At the time, he had not yet regained his FAA medical clearance. A representative from United responded the next day and stated that Bumpus's recall rights were still active until March 2019. However, a representative from ALPA also contacted Bumpus on February 1, 2019, to inform him that he had been removed from the seniority list in 2017. On February 4, 2019,

[2] The Court has heard little explanation, from either party, as to why United's records show a re-instatement and re-furlough on March 2, 2009. Neither party has identified any act by United or Bumpus corresponding to his brief recorded return to active duty. Although the authenticity of the document is not disputed, its evidence is in apparent tension with both parties' statements and implications at other places that Bumpus was on furlough from at least January 2008 through March 1, 2012 (and possibly continuously from March 2002 to March 2012). *See, e.g.,* DSOF ¶¶ 25–26, 31; DSOF Resp. ¶¶ 25–26. But because the evidence presented on this point in the parties' respective statements of facts does not directly conflict, the Court will accept as undisputed for purposes of summary judgment that Bumpus was re-instated and re-furloughed on March 2, 2009.

United reached out again to Bumpus. This time, United agreed with ALPA that Bumpus had been removed from the seniority list in 2017 because United determined that his recall rights had expired in March 2012. Bumpus then requested that United and ALPA each review his employment status; both agreed to do so. On March 18, 2019, ALPA told Bumpus that its review confirmed that he had been properly removed from the seniority list and had no recall rights. United reiterated those findings to Bumpus on May 1, 2019. United told Bumpus that it would be willing to consider him as a new hire if he wished to apply; however, Bumpus never did so. He eventually regained his FAA medical clearance in June 2020, which expired in 2024. He does not currently hold an FAA medical certificate.

**Procedural History**

After exhausting his internal grievance and arbitration procedures, Bumpus filed his initial complaint on June 20, 2023. Dkt. 1. At the time, his suit focused primarily on whether United had infringed his right under USERRA and Illinois state law to return to work for United following his military service; however, he also advanced claims for discrimination based on military service. On May 2, 2025, the Court granted United's motion to dismiss Bumpus's reemployment claims; however, it denied the motion with respect to his discrimination claims. *Bumpus v. United Airlines, Inc.*, No. 23 CV 03900, 2025 WL 1282750 (N.D. Ill. May 2, 2025). Following discovery, United moved for summary judgment on all remaining claims on March 23, 2026. The Court took the motion under advisement on May 5, 2026.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and… draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). The moving party may satisfy its burden of proof by showing that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

## DISCUSSION

After the Court's partial grant and partial denial of United's motion to dismiss, Bumpus's only remaining claims concern allegations of discrimination against him on the basis of his military service in violation of USERRA, 38 U.S.C. § 4311, and in violation of the Illinois Service Member Employment and Reemployment Rights Act ("ISERRA"), 330 ILCS 61/1-1 *et seq*.

"USERRA affords broad protections to service members against employment discrimination, providing that members 'shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership[.]'" *Crews v. City of Mt. Vernon*, 567 F.3d 860, 864 (7th Cir. 2009) (quoting 38 U.S.C. § 4311(a)). Allegations of discrimination under USERRA are adjudicated through a burden-shifting framework that is similar, but not identical, to the *McDonnell Douglas* framework used in Title VII cases. *Id.*; *see Maxfield v. Cintas Corp. No. 2*, 427 F.3d 544, 551 (8th Cir. 2005). First, a plaintiff must make out a prima facie case "by showing that his service membership was 'a motivating factor in the employer's action.'" *Id.* (quoting 38 U.S.C. § 4311(c)(1)). This is a low threshold, which can be satisfied through

appropriate circumstantial evidence. *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 284 (7th Cir. 2015). If the plaintiff establishes a prima facie case, then the burden shifts to the defendant to prove via preponderance of the evidence that the employer would have taken the same action in the absence of the plaintiff's military service. *Crews,* 567 F.3d at 864. For its part, ISERRA expressly incorporates the relevant sections of USERRA, *see* 330 ILCS 61/5-15; Bumpus's ISERRA claims are therefore subject to the exact same standard as his USERRA claims.

Bumpus alleges that United discriminated against him (1) when it did not place him on military or medical leave after Bumpus accepted his recall in 2007; and (2) when United did not reinstate Bumpus as an employee in 2019. United argues that Bumpus has failed to produce any evidence indicating that his military service was a motivating factor in United's challenged employment decisions. The Court will evaluate each claim in turn.

## I. Alleged 2007 Discrimination (Failure to Place on Leave)

Bumpus alleges that United discriminated against him in 2007 because it did not place him on military or medical leave after he accepted recall. United argues that this claim fails as a matter of law because Bumpus has not pointed to any evidence suggesting that his military service was a motivating factor for not placing him on leave. United contends that it was under no obligation to place Bumpus on leave because no evidence in the record demonstrates that he requested to be placed on medical or military leave. When Bumpus responded to his 2007 recall notice, he formally accepted recall but declined to check either of the boxes that would have simultaneously requested to be placed on leave. DSOF ¶ 16; dkt. 85-31. Bumpus also admitted at his deposition that he never requested any such leave when he accepted the recall, dkt. 85-2 at 215:20–216:10, and he has not pointed in his filings to any evidence of a later request. United argues that "requiring employees to request leave is a 'facially legitimate' policy applicable to all pilots, 'not a guise for a discriminatory purpose.'" Dkt. 87 at *9 (quoting *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016)).

Bumpus's response does not establish any evidence that his military service was a motivating factor in not placing him on leave. He primarily argues that United is incorrect to claim that employees are *required* to request leave in order to be put on leave, and he is correct that United's cited evidence does not establish any such requirement. *See* DSOF Resp. ¶ 21. Bumpus also points to two non-military comparators, Janine Purdy and John Becker, whom he claims were placed on leave in materially similar situations. Like Bumpus, both returned from furlough in 2007; unlike Bumpus, both were immediately placed on leave. He argues that no evidence establishes that either employee requested the leave they were granted when they returned from furlough in 2007. Bumpus also alleges that Becker was later removed from furlough and placed on leave in 2019 at the personal request of Paul Carlson (United's Managing Director of Crew Resources and Contract Administration). Based on this evidence, Bumpus claims that there is a question of material fact "as to as to whether [United] acted with discriminatory intent in refusing to offer Bumpus a personal leave of absence the same as similarly situated pilots such as Mrs. Purdy or Becker[.]" Dkt. 92 at *5.

The Court is not convinced. Even accepting Bumpus's argument that United does not have a policy *requiring* pilots to request leave in order to be placed on leave, he provides no evidence whatsoever indicating (a) that United had a general policy of affirmatively placing pilots on leave after learning of medical conditions preventing them from flying, despite the pilot not having requested such leave; and (b) that United refused to include Bumpus in this policy owing to his military service. Bumpus's alleged comparators also fail to provide even circumstantial evidence of discriminatory motivation. While no evidence in record shows that Becker or Purdy requested their leave in 2007, Bumpus has failed to point to any evidence that United placed either pilot on leave despite not having made a leave request, as would be necessary to make them valid comparators to Bumpus. The mere possibility that Becker and Purdy did not request leave is insufficient to defeat summary judgment. *See Hedberg v. Indiana Bell Telephone Company, Inc.,* 47 F.3d 928, 931–32 (7th Cir. 1995) ("[S]peculation does

not meet a party's burden of producing some defense to a summary judgment motion.") Bumpus also admits that, at a previous arbitration, he conceded "that Purdy's circumstances were different than his." DSOF Resp. ¶ 56. With respect to Becker, although the record shows that his 2019 leave was implemented at Carson's request, there similarly is no evidence that Becker did not request that leave initially. More broadly, Bumpus has failed to point to any evidence that United considered his military service at all (or Purdy and Becker's lack of military service) when it made the relevant employment decisions. Even extending every reasonable inference to Bumpus, the mere fact that two non-military pilots were returned from furlough and placed on leave, while Bumpus was not, cannot provide even circumstantial evidence of discrimination when Bumpus acknowledges that he never requested any leave in the first place. The Court finds that Bumpus has not established a prima facie case of discrimination with respect to United's actions in 2007.

## II. Alleged Discrimination in 2019 (Failure to Rehire)

Bumpus also alleges that United discriminated against him in 2019, when it refused to recall, reinstate, or otherwise rehire him. United argues that, here too, Bumpus has failed to meet his burden of production. It claims that it did not reinstate Bumpus because he did not have valid recall rights at the time, and that no evidence in the record suggests any other motivation. In response, Bumpus argues (1) that the stated rationale for not reinstating him was incorrect because his recall rights were still valid in January 2019; (2) that several other pilots who were re-instated and re-furloughed were offered a full ten years of recall rights; and (3) United terminated Bumpus in 2012, while he was still actively serving in the military. The Court does not find any of these arguments to be persuasive.

Central to Bumpus's claim is his argument that he possessed valid contractual recall rights through March 2019. The record is unclear as to when Bumpus's recall rights expired as a matter of law. The parties agree that the applicable CBA provided for recall rights extending ten years from when a pilot was placed on furlough. *See, e.g.,* dkt. 93-8 at 67:16–68:13. Many facts in the record suggest

that Bumpus's last active date was in March 2002, when United placed him and many other pilots on furlough. However, as noted above, Bumpus's employee profile also shows that he was returned to active service and then immediately re-furloughed in March 2009. If that employment profile is correct, then Bumpus's recall rights should have expired in March 2019; if it is not, then his recall rights should have expired in March 2012. Some evidence in record suggests that the employee profile contains inaccurate information, and that Bumpus in fact never returned to active duty after 2002. *See, e.g.,* dkt. 85-8; dkt. 93-21. Nevertheless, the evidence is not conclusive. Because the Court must draw every reasonable inference in Bumpus's favor, the Court will adjudicate the instant motion on the assumption that Bumpus's recall rights extended to March 2019 as a matter of contract law. *See Logan*, 4 F.4th at 536.

However, this interpretation of the evidence ultimately does nothing to help Bumpus's case, because the question of whether he was contractually entitled to be recalled is mostly irrelevant to his claims. The critical question, instead, is *why* United chose not to reinstate Bumpus. Here, the record provides significant evidence that United believed that Bumpus's recall rights expired in March 2012. *See, e.g.,* dkt. 85-8, dkt. 85-13 to 85-18. Even if that decision was legally incorrect, it does not *by itself* suggest that anti-military animus was a motivating factor. *Blakely v. Brach & Brock Confections, Inc.*, 59 F. App'x 844, 849 (7th Cir. 2003) ("A bad [employment] decision is not necessarily a discriminatory one."); *Ghosh v. Indiana Dep't of Env't Mgmt.*, 192 F.3d 1087, 1093 (7th Cir. 1999) ("Criticism of an employer's evaluation process, even if well-founded, is not enough [by itself] to establish pretext."); *accord Frazier v. Sec'y, Dep't of Health & Hum. Servs.*, 710 F. App'x 864, 871 (11th Cir. 2017) ("That a plaintiff's evidence suggests that an employment decision was unwise or unfair or inaccurate does not alone suggest that it was discriminatory or retaliatory.").

Here, the evidence tends to show that United and ALPA's multiple investigations into Bumpus's employee history was thorough and fair. *See, e.g.,* dkt. 85-15 at UNITED-0000024 ("[The

investigation is] proving to be quite complex. We are still looking into this and will get back to you as soon as we have any information to share."). Moreover, Bumpus has not pointed to anything in the record evincing an anti-military bias. Bumpus's only real argument for anti-military animus in the investigation comes from an allegation that Carlson, who ultimately made the decision to remove Bumpus from the seniority list (and who is himself a military veteran), did not pay sufficient attention to Bumpus's military status. Dkt. 92 at *9 ("Despite [his awareness of Bumpus's military background, Mr.] Carlson did *nothing* to investigate Bumpus' situation further."); *see also* DSOF Resp ¶ 30 ("Loesel and Carlson were aware of Bumpus' military service and therefore should have known that he may have been entitled to protection due to the same."); *id.* ¶ 34 (Carlson "did not check with anyone else or check any other records to see if Bumpus had in fact engaged in further military service after 2007."). But while an alleged failure to sufficiently attend to Bumpus's military service might suffice as evidence of an illegal failure to rehire under § 4312 of USERRA (a claim that the Court already dismissed), it provides no evidence of discriminatory motive under § 4311 of USERRA. To the contrary, this is evidence against animus, because it tends to show that Carlson didn't take Bumpus's military service into account at all when removing him from the seniority list. Moreover, the record also shows other United and ALPA employees affording special consideration of Bumpus because of his military status. For example, when ALPA representative Jeffrey Loesel emailed Bumpus on February 1, 2019 to inform him that he had been removed from the seniority list in 2017, he included the following details:

> I understand you may have been performing military work during that period. If you have any paperwork you can provide noting that you did indeed submit for a Military Leave of Absence upon your recall in 2007 and United acknowledged it, please forward that to me. Please also forward any other documents you may have indicating you have taken action since 2002 to maintain your right to employment with United.
>
> I want to be clear I am only reviewing your rights under the legacy United collective bargaining agreement. If you believe you have a separate right to employment under

> USERRA, that would be a claim you would have to make through the appropriate channels.

Dkt. 85-14 at UNITED-0000001. In short, the Court has seen nothing in the documentary evidence that permits it to draw an inference of animus.

With respect to Bumpus's comparators, the Court also finds that they do not permit an inference of discriminatory motivation. He points to several other pilots for whom United honored ten years of contractual recall rights and argues that the only significant difference between them and himself is their lack of military service. However, his cited evidence shows that each of these comparators elected to be recalled within ten years of the date when United believed their most recent furlough had begun. That is *not* true for Bumpus, as discussed above, so it is doubtful whether these other pilots actually were similarly situated to him. Moreover, Bumpus essentially ignores the evidence of comparators identified by United.[3] Specifically, United removed two other pilots (Angie Taylor and Rick Sniderhan) from the seniority list in 2017 after a review of their employment records indicated that their ten-year recall rights had expired in 2013. Dkt. 85-13. Both had no military background. Their situation matches Bumpus quite closely, as he also was removed from the seniority list in 2017 after an investigation concluded that his recall rights expired in March 2012. Indeed, as Bumpus himself notes, ALPA "suggested… removing Bumpus due to perceived similarities in his record" compared to those of Taylor and Sniderhan. DSOF Resp ¶ 30. In other words, Bumpus concedes that, at the time of his removal, United viewed his situation as being essentially similar to that of two non-military comparators. This is not a record that permits a reasonable jury to make an inference of animus.

---

[3] Bumpus disputes certain minor aspects of United's description of these pilots in his response to United's statement of facts, but he does not dispute any of the points of similarity discussed in this paragraph. *See* DSOF Resp. ¶ 30. Both pilots feature heavily in United's summary judgment memorandum of law, *see* dkt. 87 at *4, 10, but go entirely unmentioned in Bumpus's response brief, *see generally* dkt. 92.

Bumpus's final argument is that anti-military motives are evidenced by United's alleged insistence that Bumpus "was terminated in March of 2012"—when he was still serving in the military. Dkt. 92 at *15. However, Bumpus flagrantly mischaracterizes the record here. The undisputed evidence shows that United made the decision to remove Bumpus from the seniority list (effectively terminating his employment) in 2017, about four years after his service ended. DSOF ¶¶ 28–35; *see* DSOF Resp. ¶¶ 28–35. United made that decision based on a determination that Bumpus's recall rights expired in 2012, but no termination decision was actually made in 2012. Bumpus cited evidence does not show otherwise. The Court finds that the timing of neither United's 2017 to remove Bumpus from the seniority list nor its 2019 decision to refuse to reinstate Bumpus is even remotely suggestive of anti-military animus.

In sum, Bumpus has failed to meet his burden of production. He has not pointed to *any* evidence that would permit a reasonable jury to infer that United's actions were even partially motivated by discriminatory motives. *Cf. Celotex Corp.*, 477 U.S. at 325. In reaching this decision, the Court expresses no opinion as to whether Bumpus's termination was proper according to his contractual recall rights. The Court is also appreciative of Bumpus's honorable military service. But the mere fact that Bumpus is a veteran does not mean that a decision not to rehire him or not to place him on unrequested leave, was motivated by anti-military animus. More evidence is needed to sustain such a charge, and Bumpus has not provided it, under either USERRA or ISERRA. The Court therefore grants United's motion for summary judgment in full.

## CONCLUSION

The Court grants Defendant United's motion for summary judgment [84] on all claims.

**IT IS SO ORDERED.**

Date: 11/6/2026

Entered: ______________________________
SHARON JOHNSON COLEMAN
United States District Judge